CHITTENDEN January, 1830.

Murray et al.
*vs.*
Eldridge.

## ESSEX BRIDGE COMPANY *vs.* THADDEUS TUTTLE.

CHITTENDEN, January, 1830.

That assumpsit will lie in favour of a corporation for legal assessments, when no statutes or bye-laws provide any other remedy, though there be no express promise.

That there must be notice and demand before suit, when such assessments are payable in grain, unless rendered unnecessary by a fixed time and place of delivery.

This was an action of *assumpsit*, brought by the plaintiffs to recover the assessments on ten shares of stock, which the plaintiffs alleged the defendant had subscribed. The defendant pleaded *non assumpsit*. On trial the plaintiffs introduced a certified copy of the act incorporating the said company, which was read to the jury. To prove the subscription of the ten shares by the defendant, the plaintiffs produced a book of records, which was proved to be the records of the company, in which it appeared, that the defendant was a stockholder to the amount of ten shares. *Guy C. Burnham* was sworn as a witness, who testified he was a clerk of said company ; that the said book was the records of the company ; that the defendant attended the second meeting of the stockholders, and, on that occasion the defendant, among others, signed his name to a paper bearing the date of January 7, 1825, as follows : " *Thaddeus Tuttle*, ten shares." To the introduction of this testimony the defendant objected, but the court overruled the objection. It appeared by said records, that the directors, on the 7th March 1825, made an assessment of three dollars on each share, and that notice thereof was published in the *Northern Sentinel*; and it was proved that the defendant, at that time, took that paper. It also appeared by said records, that the directors, on the 19th September, 1825, made another assessment of five dollars on each share, and on the 17th January, 1826, an assessment of eight dollars on

CHITTENDEN
January,
1830.
───────
Essex Bridge
Company
vs.
Tuttle.

each share, and, on the third July, 1826, an assessment of three dollars on each share. And the plaintiffs produced a witness to show that the notifications were posted up in the neighbourhood of said bridge ; but no evidence of any actual knowledge thereof by the defendant. It also appeared by said records, that, at a legal meeting of the stock-holders on the first day of January, 1827, a further assessment of one dollar on each share was voted by the stock-holders ; but that the defendant was not present. It further appeared, that said bridge had been erected, and had been accepted by the judges of the county court. On this evidence the defendant contended, and requested the court to direct the jury, that the subscription for the ten shares was not, of itself, sufficient to charge the defendant in this action ; and that it could not be sustained without an express undertaking to pay the assessment. But the court directed the jury, that an express undertaking to pay the assessment was not necessary, but the action would lie on an implied promise ; and that the jury were at liberty to infer an undertaking from all the circumstances in the case, if, in their opinion, the said circumstances were sufficient ; to which the defendant excepted. The plaintiffs requested the court to direct the jury, that the defendant was bound by the assessment so made by the directors and notified as aforesaid, whether he had actual notice thereof or not. But the court directed the jury, that the defendant was not bound by said notifications, unless from the circumstances they could infer he had actual knowledge thereof ; that, as to the first assessment, which was published in the *Northern Sentinel,* they might infer he had notice from the fact, that he took the paper ; and that, as to the last assessment voted by the stock-holders, the defendant in legal contemplation was supposed to be present ; but, as to all the other assessments, he was not bound, as there was nothing from which actual notice could be inferred. And the jury returned a verdict on the first and last assessments. The plaintiffs also produced the deposition of Mr.———to prove that the defendant was a stock-holder, and, also, to prove that the defendant had notice of the assessment : to the reading of which the defendant objected ; but the court admitted it to be read.

Exceptions having been filed by the defendant, and allowed by the court, stating the foregoing facts, the cause was ordered to the Supreme Court, on a motion for a new trial.

*Argument on behalf of the defendant.*—1. The case showing no evidence of an express promise, the principal question is, whether the plaintiffs can maintain assumpsit upon an implied

promise, arising from the subscription. The defendant contends,
that the signing of the paper, produced in evidence at the trial,
could have no other effect than to make him a member of the
corporation, and, as such, subject to the legal duties belonging to
him in that character. The power to raise money by assessment,
or otherwise, is not by law incident to a corporation : and the
only authority they can have, to impose an assessment, must be
derived from their act of incorporation; and they can have no other
means of imposing assessments than are given them by the same
act. The act gives them, in general terms only, the powers and
rights incident to corporations, and the power to make by-laws,
not repugnant to the laws and constitution of the state. It was not
shown, that the by-laws gave the directors any power to make
assessments, or that such power came within their general du-
ties ; and it cannot be contended, that the bare appointment of
directors would give them an unlimited power to tax the members
of the corporation, and to enforce the payment of the tax by ac-
tion. Neither was it shown, that the by-laws provided that a tax
might be made by the stockholders at ordinary meetings, or, in
short, that authority was any where lodged to compel any individ-
ual to pay any call without his express consent. The duties and
obligations of the members seem to be purely voluntary. But,
admitting that the assessments were legally made, yet the defend-
ant contends that the paper produced, together with the other
evidence, does not tend to establish any promise, upon which an
action can be maintained—See *Andover* and *Medford T. C.* vs.
*Gould,* 6. *Mass. Rep.* 40.—*New Bedford* and *Bridgewater T.
C.* vs. *J. Q. Adams,* 8. *Mass. R.* 138.—*Andover* and *Medford,
T. C.* vs. *Hay,* 7. *Mass. R.* 102. In all which cases it was
holden, that assumpsit could not be maintained without an ex-
press promise. The same point, though not decided, is recog-
nized in *Worcester T. C.* vs. *Willard,* 5. *Mass. R.* 80.— *Gilman*
vs. *Pope,* 5. *Mass.* 491.—See also 2 *N. H. Rep.* 380, *F. Glass
Co.* vs. *Alexander.*

2, The defendant contends, that, if liable at all, he could not
be so without actual notice. As to the notice of the first assess-
ment, it is contended, that notice by publication in a newspaper
could not be sufficient, unless it was made so by the by-laws,
which is not shown. And, as to the assessment made by the
directors, the defendant, though a member of the corporation,
was not bound to take notice of their acts, unless they are shown
to be such acts as are expressly authorized, either by the act of
incorporation, or by the by-laws. The deposition was used for
the purpose of showing, that defendant was a member of the cor-

CHITTENDEN *January,* 1830. poration, and contains nothing from which the jury could have inferred actual notice of the assessment.

Essex Bridge Company *vs.* Tuttle.

*Argument on behalf of the plaintiffs.*—Corporations are not limited in their power of making contracts, but may make any contract, touching their corporate interest, which individuals are competent to make.

A contract between a corporation and one of their members is equally as binding upon the parties as a contract between private persons.

The authority of corporations to maintain this action on implied promises, is laid down and well established by the following authorities:—*Chit. Pl.* 91, (*96*) 1 *Esp. Dig.* 7, (*25*) *Bul. N. P.* 129.—*Mayor of London* vs. *Gorrey,* 2 *Lev.* 174.—*Barber Surgeons of London* vs. *Pelson,* 2 *Lev.* 252.—*Seward* vs. *Baker,* 1 *Term Rep.* 616.—*Whitfield* vs. *Hunt,* 2 *Doug.* 727.— *Mayor of Exeter* vs. *Trimbel,* 2 *Wilson,* 95.

All the points requisite to sustain an implied assumpsit, which can exist in any case, are to be found in this; that is, a good consideration, a charge to the plaintiff at the special instance and request of defendant,—and the benefit by him obtained.

In cases of joint stock of companies, or of individuals associated for their common benefit, it will be conceded, that the parties are liable for all expenditures authorized by the object of their association, and their several proportions may be collected by action of assumpsit or account, and it is not perceived that the act of incorporation limits their power.

We contend, then, that, on common and general principles, this action well lies, and, unless there is something to distinguish this case, that the plaintiffs must recover.

We are aware, that in *Massachusetts,* a different doctrine has prevailed in some cases, and that the authority of corporations is limited to express contracts. But these decisions are founded on the peculiar provisions of their statute. The general doctrine, however, for which we contend, is recognized. In the case of the *Worcester T. C.* vs. *Willard,* (5 *Mass.* 801,) the court decide, that the corporation may contract with a member, and may recover on an express promise. In the case of *Andover and Medford T. C.* vs. *Gould,* (6 *Mass.* 40) the court decide, that this action will not lie on an implied promise : but they found themselves on the peculiar provisions of their statute, which the court consider excludes all presumption of a contract. The doctrine of the *Massachusetts* courts cannot apply to this case, because we have no statute authorizing the forfeiture of delinquent proprietors'

shares ; and it is quite evident that had it not been for the statute, CHITTENDEN,
January,
1830.
the *Massachusetts* courts would have decided differently.

These shares are the sole and exclusive property of the de- Essex Bridge
Company
vs.
Tuttle.
fendant, of which he cannot be divested, but by due process of
law. The case then is this : the defendant became a stockholder
at his particular request—the company allow him to take ten
shares, which he holds, and over which the company have no
controul ; and, if they cannot maintain this action, the defendant
will hold the shares without any liability.

At a subseqent day of the term, the opinion of the court was
delivered by

HUTCHINSON, J.—The plaintiffs have brought their action of as-
sumpsit against the defendant, claiming to recover of him, as a
member of the corporation and a subscriber to the stock, there-
in, the amount of the assessments upon his shares, to defray the ex-
pense of erecting their bridge. The declaration contains several
special counts for those assessments, and one general count for
monies laid out and expended in building their said bridge. The
whole claim of the plaintiffs is two hundred dollars. This action
was tried upon the *general issue* in the county court, and a bill of
exceptions there allowed, presents several questions for the decis-
ion of this Court.

That the plaintiffs have been regularly incorporated by the le-
gislature, and have become regularly organized ; and that they
have erected their bridge to the acceptance of the board, appoint-
ed by the statute for that purpose, are questions put at rest by the
exceptions allowed. That the defendant subscribed for ten
shares in the stock of the company, must be considered as estab-
lished by the verdict. The defendant's liability to pay the assess-
ments as they have been made by the company, and his liability
to have the same recovered from him by an action of assumpsit,
form the questions now in dispute.

The act of incorporation and the record books of the compa-
ny are referred to and made a part of the case. The act passed
in November, 1824. This gives the company power to enact
bye-laws ; but none were enacted till January, in the year 1827 ;
and none at that time containing any provision for collecting taxes
or assessments. The act makes the stock of the company per-
sonal property, and directs how attachments of it may be made ;
but says nothing about the collecting of assessments, and nothing
about the forfeiture of shares upon any contingency whatever.

The time and place for holding the first meeting of the compa-
ny were appointed by the act ; and the same were holden accord-

CHITTENDEN, *January.* 1830.

Essex Bridge Company *vs.* Tuttle.

ingly, on the 3d of January, A. D., 1825. At that meeting the company voted, that their bridge stock be divided into two hundred shares, of twenty dollars each ; and that the stock-holders should be entiled to one vote for each share they might possess. They also voted the money raised by the sale of said shares should be expended, by three directors thereafter to be chosen, in building a bridge across the Onion river, agreeably to said act ; and, that the several instalments be paid in cash and grain equally. The company then voted to adjourn said meeting till Friday evening, the 7th of said January. At this adjourned meeting of January 7th, *Thaddeus Tuttle,* the defendant, attended, and subscribed his name, thereby becoming a subscriber for the ten shares, the assessments upon which are now claimed by the plaintiffs.

The meetings of the company were kept alive by adjournments from time to time ; directors were chosen, and assessments made, and other business of the company attended to, as suited their convenience, until the bridge was completed. The several assessments, the first of which was made March 7th, 1825, and the last as late as July, 1826, amounted to the sum of twenty dollars upon each share.

At one of said meetings, holden February 7th, 1825, the said company voted that the directors should build the bridge, as soon as one hundred and fifty shares of the stock should be taken up ; and, that the treasurer make calls from time to time, on the shares, as the business might require.

The bridge was completed and accepted according to the act, October 19th, 1825.

Under the charge of the court, the plaintiffs recovered the first assessment, notified in the *Sentinel,* and the last also, that was voted in the meeting of the company. The other assessments were rejected from the verdict, for want of proper notice.

It appears that these assessments were to be paid, one half in cash, and the other half in grain ; and no regulation or contract appears about the place of payment, or of the delivery of the grain ; no place of common deposit for the company agreed upon, to render a demand unnecessary ; and if a demand were necessary, none appears to have been made in the season for it, nor even before this action was commenced. This difficulty is not removed by any notice in the warning of the meeting, that any assessments would be made. This, considering the mode of doing their business, the keeping their meetings alive by adjournments, and that known, of course, to the stock holders, may create no other difficulty, but increase the necessity of a demand before suit.

With regard to the assessment made by the directors, and not by a vote of the company in open meeting, there is a still greater necessity for a demand and notice. This can never be considered as payable till notice, either personal or in some way pointed out by the vote or by-laws of the company. But the charge of the court authorized a verdict for the plaintiffs for two assessments, upon such notice as was proved, without any personal demand, or any thing equivalent thereto, notwithstanding half was payable in grain. This we consider erroneous ; therefore the judgement of the county court is reversed, and a new trial is granted.

CHITTENDEN
*January,*
1830.

Essex Bridge
Company
*vs.*
Tuttle.

Whether the plaintiffs will elect to prosecute this action further, or become non-suit and commence a new, we know not. In either case, it might be beneficial to the parties to know upon what grounds the plaintiffs may now have recovered, if presented in the case.

The strong ground of defence against this action, in case notice and demand were sufficiently proved, is, that there is no express promise proved, and that a corporation cannot recover upon an implied promise. To this point are cited several authorities from *Massachusetts* and *New Hampshire.* With regard to these authorities, two things are worthy of notice. 1. The cases themselves are not so broad as the principles laid down by the courts to govern them ; and 2. Those turn wholly upon the provisions of the statutes under which the several corporations were acting. Those statutes pointed out a remedy for the non-payment of assessments ; to wit, the forfeiture of the shares. And, surely, when a man subscribes for stock in a corporation, and the laws in force, whether the general laws of the state, or those specially regulating the concerns of such corporation, provide for the forfeiture of the stock for non payment of assessments, and no other mode is provided to enforce payment, it is fair to conclude and adjudge the corporation destitute of any other remedy but to take the forfeiture of the shares. In this state, neither the general laws nor the act by which the plaintiffs were incorporated, nor any bye-laws of the company, create any forfeiture of the shares for the non payment of the assessments. Therefore, this case comes not at all within the principles and reasons of the authorities cited from *Massachusetts* and *New Hampshire.*

Moreover, the stock of this company having been divided into two hundred shares at twenty dollars a share, before *Tuttle,* the defendant, subscribed, and he, by his subscribing, having acquired a title to ten shares of that stock, so divided, he may well be considered as accepting the proposition to take the ten shares at that price, or at such a price, not exceeding twenty dollars a share, as would be

<div style="float:left">CHITTENDEN,<br>January,<br>1830.<br><br>Essex Bridge<br>Company<br>vs.<br>Tuttle.</div>

the proportion of said ten shares of the whole expense of building the bridge; and to pay for the same in such reasonable time or times as the expenditures might require. The consideration may be considered as executed. The defendant bought the ten shares. This gave him a right to vote in all the meetings of the company, and to have his vote count as ten of the two hundred votes. This gave him a right to ten dollars of every two hundred received as tolls at the bridge when erected. For this right he ought to make payment according to the mutual understanding of him and the company. Assumpsit was the only remedy to compel payment, which then existed, or has ever existed ; and he must have signed to render himself liable to existing remedies, while his signing gave him the property. At any rate, the legal effect of his subscribing for the stock is to render him thus liable.

This comes fully within the equity of a case of assumpsit for use and occupation on a parol lease. This lies as well in favor of a corporation as of an individual.—See 13 *Com. Law Rep.* 347.—*The Mayor and Burgesses of Stafford* vs. *Till,* 4 *Bing.* 75.

The general principle of sales, or letting for use, applies as well to corporations, of matters which they have a right to sell or let for use, as to individuals, enjoying the same right : where there is no other specific remedy, the promise will be implied to pay for what is purchased or hired.

Here was a sale. The ten shares became vested in the defendant. He may be compelled to pay for them. But he must not be compelled to pay otherwise, than according to the terms of payment proposed by the vote of the company before the defendant became a purchaser ; that is, half in money and half in grain. And a demand must be made before suit, unless the vote contained a stipulation about the time and place of payment, by which a demand would be rendered unnecessary.

<div style="text-align:right">New trial granted.</div>

*Charles Adams,* for plaintiffs.
*Bailey* and *Marsh,* for defendant.