5 787
e144 673

# SELMA AND TENNESSEE RAIL ROAD COMPANY v. TIPTON.

1. An action will lie to recover a subscription for stock in an incorporated company, although the charter declares, that upon the failure of the subscriber to pay any requisition made by the directors thereon, his stock " shall be forfeited to the company, with the instalments which may have been paid, &c." The right to claim the forfeiture, and the proceedings consequent thereupon, are merely a cumulative remedy.

2. In an action by a corporation, the declaration need not *specially* allege a compliance with every particular circumstance relating to its organization, which is required, in order to its becoming invested with the privileges and powers conferred by its charter. Although it may be necessary to prove these matters specially, the allegation may be more general.

3. A regular subscription for shares in the stock of an incorporated company, whether made previous to its organization or not, if it organizes as provided by the charter, imports in itself a sufficient consideration, and may be declared on as the foundation of an action.

4. *Semble :* Presumptions are applicable as well to corporations as individuals; persons acting publicly as officers of the corporation are presumed rightfully in office ; and the performance of all necessary steps presumed, in order to make a corporate act legal.

5. Where the act creating a corporation provides, that its members, or they who may become such, shall organize before their corporate existence is complete ; in an action to recover the price of stock subscribed for, previous to their organization, the defendant by an appropriate plea, may throw upon the plaintiff the burthen of showing a compliance with the requirements of the charter.

6. *Semble :* That a legislative charter, or rather the privileges and powers conferred by it, cannot be adjudged void and inoperative in an indirect proceeding ; but this can only be done in a proceeding instituted at the suit of the State, with a view to such object.

7. Not only estoppels, technically so called, but estoppels *in pais*, operate both for and against corporations.

8. Where the charter requires that a subscriber for stock in an incorporated company, shall pay five per cent. on the amount at the time of his subscription ; if instead of making the cash payment, he gives his note therefor, participates in the organization of the company, becomes one of its directors and pays his note; he cannot afterwards insist as a defence to an action to recover an instalment, that he did not pay the *five per cent.* at the time of subscribing.

9. A subscriber for stock in an incorporated company, to whom the charter does not accord that privilege, cannot withdraw from the company, and thus avoid the liability to pay for it.

WRIT of Error to the Circuit Court of Dallas.

This was an action of *Assumpsit*, by the plaintiff in error, against the defendant. The declaration contains four counts. The first count avers that the plaintiff was created a coporation by the name in which it sues, by an act of the General Assembly, approved the 22d December, 1836, and in virtue of an organization as therein provided for; that the object of the corporation was the construction of a rail-road from Selma, in the county of Dallas, to the Tennessee river, on the line between Alabama and the State of Georgia, in the direction of Ross' ferry, or some point below that ferry on the Tennessee river. *Further*, in consideration, that the plaintiff would permit the defendant to become a member of the corporation, and proprietor of three hundred shares of one hundred dollars each, the latter promised he would pay to the former, thirty thousand dollars, in the following manner, to wit: five dollars on each share, at the time of subscribing; which sum was paid: and the remainder at such time as the directors of said company should appoint, in instalments, not exceeding ten per cent. upon twenty days notice being given in a newspaper, of each requisition. It is also averred, that by plaintiff's permission, the defendant did subscribe for three hundred shares at one hundred dollars each, in conformity to the provisions of the act of incorporation; and that since the time of subscribing therefor, and organizing the company, to wit: on the 20th day of October, 1838, at, &c. aforesaid, the directors did require an instalment of two per cent. to be paid on the defendants stock, on the first day of December, thereafter, and gave twenty days notice of the requisition in the Selma Free Press, a newspaper printed and published in said county; which instalment amounted to six hundred dollars—of all which, the defendant had notice, &c., yet he hath not paid, &c.

The second count, omitting what is stated in the first, of the manner in which the plaintiff became a corporation, after averring its organization, alleges that the defendant subscribed for shares of stock, and became a member of the company substantially, as does the first count. It also avers in the same manner, that a requisition for an instalment of five per cent. on each share, was made by the plaintiff, of the defendant, on the 13th March, 1839, at, &c. aforesaid, to be paid on the 5th April thereafter; that

publication was made for twenty days in the Selma Free Press; of all of which, the defendant had notice, but has not paid, &c.

The third count, after stating in the same manner as the second, the defendant's subscription or contract for stock, and its terms, alleges, that the defendant did become a member of the corporation, and proprietor of three hundred shares, in conformity with the provisions of the act of incorporation. It is then averred, that on the 24th day of June, 1839, a requisition was made of an instalment of five per cent. to be paid on the first of December, thereafter; that publication was made in the Selma Free Press, &c. for twenty days—of all which, the defendant had notice, but has not paid, &c.

The fourth count is for money lent, and advanced, &c.  To the three first counts, the defendant demurred severally, and to the fourth, he pleaded *non-assumpsit and nul tiel* corporation. The demurrers being sustained, the plaintiff declined amending his declaration, and the cause was thereupon submitted to a jury upon the issues of fact, to the fourth count.  On the trial, a bill of exceptions was sealed, at the instance of the plaintiff, from which it appears that the plaintiff offered as a witness an individual who was one of the commissioners mentioned in the act of incorporation, was secretary to the board, and afterwards of the company, who testified that the commissioners, shortly after the passage of the act of incorporation, opened books of subscription to the capital stock of the company, as directed therein. On the first two days, the sum of three hundred thousand dollars were subscribed by several individuals, among whom the defendant was a subscriber for three hundred shares, amounting to thirty thousand dollars.   The book of subscription first stated the object proposed, with a written promise in these words: " We the undersigned agree to pay the sums annexed to our respective names, towards the capital stock of the Selma and Tennessee rail road company, in conformity with the provisions of the act incorporatidg said company." Immediately under which were drawn four columns, in the first of which was set down the day of the month and year; in the second, the subscribers for stock wrote their names; in the third the number of shares subscribed; and in the fourth, the aggregate sum to be paid therefor.

The five per cent. on the stock of each subscriber was in a few instances only, paid in cash; but notes were taken by the com-

missioners for the amount payable to themselves. The defendant was one of those who, instead of paying cash, gave his note, which he has since paid. During the time the books were open, there was no effort to conceal the manner in which the business was transacted, and all persons had opportunities of being informed of it. The notes, instead of the cash, were taken for the convenience of the subscribers as cash, inasmuch as the company had no use for money at that time. After the supposed organization of the company, hereafter stated, all these notes were transferred by the commissioners to the company, and the most of them, were paid out by the company to the contractors who had undertaken to do work for them in reference to such a mode of payment. And the commissioners also paid over to the company the cash they had received at the time of subscription. At a meeting of the commissioners previous to that holden for the purpose of organization, they were of opinion that the company might organize under the charter; and five hundred thousand dollars being subscribed, and five per cent. thereon paid in cash and notes, they accordingly gave notice by advertisement in a newspaper, that an election of nine directors would be made by the company at a time and place designated. Pursuant to the notice, an election was holden—a majority in interest of the stockholders being present in person, or by proxy, and nine directors were chosen to serve for one year. At this election, the defendant and a majority of the commissioners were present, and the former joined in the proceedings, and actually voted. The directors thus elected, chose a President from among themselves, and continued the prosecution of the work by collecting materials and making contracts for grading, &c., and did grade twenty-seven miles of the road; collected money from the subscribers and made payments to the contractors, for work done, &c. and in the prosecution of the business, contracted debts to the amount of about forty thousand dollars more than has been paid. That the work on the road has been suspended in consequence of the failure of the stockholders to pay up their subscriptions; and the company has no means of paying their debts, unless a judgment for the stock can be enforced. That a considerable portion of the five per cent. required at the time of subscription was still unpaid, and due from insolvent persons.

An annual election for directors was holden in 1839, and it was

the last; since which time. the directors then chosen, have continued in office. In 1838, the defendant was elected a director, and acted as such, and during the continuance of his appointment paid off the note which he had given to the commissioners for the payment of five per cent. on his stock; afterwards, during the same year, he declared to the directors that he forfeited his stock, and would have nothing more to do with the company; and never afterwards attended.

On the 13th of March, 1839, a call was made, under a resolution of the board for the payment of five per cent. on each share, on the 15th April next thereafter; and on the 24th June, 1839, another requisition was made for the same amount, on the 1st December next thereafter. In both instances, twenty days notice was given by publication in a newspaper, but neither requisition had been paid by the defendant.

The stockholders held the first election of directors under an assurance from the commissioners that the stock had been subscribed and the first five per cent. paid as required. The plaintiff read the act of 1841, to the jury, and offered to prove that the notes so received by the commissioners answered the purposes of the company as well as cash, which evidence was rejected by the court, and the plaintiff excepted.

Just as the trial was entered upon, the plaintiff's counsel gave notice to the defendant's counsel, to produce on the trial, a certificate of stock, which the defendant had received at the time he paid the note given to the commissioners. The defendant lived eight miles from the place of trial, and did not go home while it was progressing: on the next day, but before the trial had closed, the plaintiff proposed to ask defendant's counsel if he had not the certificate in his possession; but the counsel making oath that he knew nothing of it, except as derived from the defendant in the character of counsel, the court refused to compel an answer to the question. The plaintiff then proposed to prove that a certificate of stock had been given to the defendant at the time he paid his note, given for the five per cent. but this as well as a proposition to prove its contents, was refused by the court. To all which the plaintiff excepted.

The court charged the jury, that before the company could be organized there must have been five per cent. on the five hundred thousand dollars subscribed, paid in gold or silver, or its repre-

sentative; and if this was not done it was not a legal corporation, and the plaintiff could not recover of the defendant, unless he was estopped by his own acts. That he was not estopped by a knowledge of the manner in which the intalment was paid; by attending, acting and voting at any meeting of the stockholders or directors, either previous, at, or subsequent to the supposed organization of the company.

The plaintiff's counsel prayed the court to charge the jury as follows, that as by the charter the commissioners are directed to supervise the subscriptions, and to see to the performance of the conditions precedent to the organization of the company, and the first election of the officers was held under their authority, &c., the organization must be considered to have been properly done, unless the State interpose; and the defendant cannot show the illegality of the acts of the commissioners as a defence. Which charge was refused: *Further*, that if the defendant was aware, that much the greater part of the five per cent. due on subscription was paid in notes, and himself and the other subscribers, with this knowledge, accepted the charter; gave his note which he paid; attended and acted as a stockholder and director, he cannot insist on the failure to make the cash payment as a defence to the action; which charge was also refused. *Again*, if the defendant has paid any instalment since the supposed organization, and received a certificate of stock, then he cannot successfully defend this action on the ground that the company was not legally organized. Which charge the court considered abstract, and consequently refused to give it. *Also*, that the commissioners were the agents of the State, and if they received notes previous to the organization of the company, for the instalment due upon subscription, the defendant cannot resist a recovery upon proof of that fact, although the commissioners, in this respect, exceeded their authority. That the third section of the charter, only fixes the time when the first instalment was due, and does not make its payment before the election of directors an indispensable prerequisite; which charge the court refused to give. *Again;* that if there was an organization of the company in fact, and the transaction of business as a body corporate for several years, the defendant cannot object that the organization was irregular; and this although the company, by mismanagement of the commissioners may have commenced business before the requirements

of the charter had been complied with; which charge the court refused to give. One other charge was prayed and refused, which it will be unnecessary to state, as it is in substance a repetition of several of the others already recited. The questions of law arising upon the bill of exceptions are duly reserved. Under the ruling of the court, the jury returned a verdict for the defendant, and a judgment was thereupon rendered.

DARGAN and EDWARDS, for the plaintiff in error.—1. The demurrer to the declaration was improperly sustained, as the fact of organization is sufficiently alleged. [3 Ala. Rep. 660; 1 Id. 241; 5 Mass. Rep. 80; 10 Id. 327; 5 H. & Johns. Rep. 122; 1 Johns. Cases, 132; 14 Johns. Rep. 238; 2 Bibb's Rep. 577; 4 Rand. Rep. 579; 2 Cow. Rep. 664. See charter, passed in 1836.]

2. The plaintiff should have been permitted to prove, that the notes taken by the commissioners answered the purposes of the company as cash. *Further*, that a certificate of stock was received by the defendant; this would have been proof of its existence, not the contents of the paper. [3 Phil. Ev. C. & H's notes, 1187; 7 Wend. Rep. 34.] The reason given by the defendant's attorney, for refusing to answer as to this point were insufficient to excuse him. [3 Phil. Ev. C. & H's notes, 1186; 4 Wash. C. C. Rep. 719; 17 Johns. Rep. 335; 18 Id. 330.]

3. Even conceding that five per cent. should have been paid in cash, for stock subscribed for at the time of subscription, and still the defendant cannot take advantage of the reception of notes instead of money. 1. Because of his knowledge and adoption of all the irregularities complained of. [16 Serg't & R. Rep. 140; Angell & Ames on Corp. 295–8; see also notes, 48; 1 Caines Rep. 381; 5 Litt. Rep. 47; 6 Verm. Rep. 315; 3 Hawks' Rep. 520; 2 Greenl. Rep. 404; 1 Hall's Rep. 191–8; 5 N. Hamp. Rep. 367; 7 Pick. Rep.     ; 7 Mass, Rep. 184; 7 Conn. Rep. 86; 3 Pick. Rep. 327; 11 Mass. Rep. 118.] 2. Because the company have, since its organization, as well as himself, ratified and approved his subscription, by his election to, and acceptance of a place in the directory, &c. [Ang. & A. on Corp. 48, 138, 195–8; 11 Mass. Rep. 138.] 3. Because the subscription for stock, organization of the company, &c., were all done under the direction of commissioners appointed by the State. [3 Hawks' Rep.

520; 4 Paige's Rep. 229; 1 Metc. & P. Dig. 593, sec. 232. 4. Because the five cent. has been paid, and the company *de facto* organized. [2. Phil. Ev. 288, 305; 16 Mass. Rep. 101, 301; 5 N. Hamp. Rep. 367; 12 Wheat. Rep. 70-6; 10 Wend. Rep. 267; 5 Litt. Rep. 45; 6 Verm. Rep. 315; 1 Hall's Rep. 191 ]

4. The defendant could not absolve himself from all liability to pay his proportion of the debts of the company, contracted upon the faith of stock subscribed, but not paid for. . Justice and good morals forbid it. [Ang. & A. on Corp. 295; 21 Wend. Rep. 273.]

5. The provisions of the charter in respect to the manner in which the stock was to be paid for are merely directory—and it is not for the defendant to object that a *cash* payment was not made in *specie,* at the time of subscribing. [2 Stewart's Rep. 147; 11 Johns. Rep. 101—see note; Angell & A. on Corp. 292; 13 Eng. C. L. Rep. 194; 1 Caine's Rep. 381.]

6. The defendant cannot set up as a defence, that the plaintiff is not a corporation; the cases in the New York Reports, and in 8 Serg't & R. Rep. which maintain the right of a corporation to show a non-performance of a condition precedent, are very unsatisfactory. But if it were allowable to make such a defence, it cannot avail in this case; because the plaintiff had been recognized as a corporation before this suit was brought. [Statutes of 1838 and 1841.]

Plaintiff's counsel also cited, 5 Mass. Rep. 230; 2 Johns. Ch. Rep. 389; 5 Id. 381–7; 9 Wend. Rep. 351, 379; 5 H. & Johns. Rep. 122.

R. SAFFOLD, and J. B. CLARK, for the defendant.—1. The demurrers to the three first counts of the declaration, were rightly sustained. It should have been specially alleged, how the plaintiff became a corporation, and not generally that the company was organized according to the provisions of the charter; this is a conclusion of law which the court should determine from the facts. [1 Chit. Ple. 521; 2 Marsh. R. 550.] *Further,* that five dollars was paid on each share, at the time of subscribing. [1 Chitty's Plead. 309, 315; 1 Caine's Cases in Error, 86, 94; 8 Serg't & R. Rep. 219; 9 Johns. Rep. 217; 11 Id. 98; 14 Id. 238.] Nor is it alleged with sufficient precision that the defendant promised to pay.

[1 Chitty's Plead. 298.] The fact of subscription is not equivalent to a special promise.

2. But admitting that the objections pointed out to the declaration, cannot be sustained, then it is insisted, that an action will not lie for the non-payment of stock; the only consequence is a forfeiture of the stock. The cases in New York and Pennsylvania, which maintain this to be a cumulative remedy, are founded on statutes essentially different from the charter before us. This court have decided in analogous cases, that there is no remedy by action. [5 S. & Por. Rep. 17; 3 Por. 182. See also, 1 Caine's Cases in Error, 94; 2 N. Hamp. Rep. 380; 7 T. Rep. 36; 2 Bibb's Rep. 577; 5 H. & Johns. Rep. 122.]

3. That all the facts necessary to constitute the plaintiff a corporation, should have been proved under the state of the pleadings. [18 Johns. Rep. 137; 8 Verm. Rep· 445.] Where an act of the Legislature prescribes the manner in which a number of individuals may become a corporation, the directions of the act must be complied with. [2 Cranch's Rep. 167; 4 Wheat. Rep. 691; Ang. & A. on Corp. 49, 62.] One of the conditions to become a corporation in the present case, was the payment of five per cent. at the time of subscribing for stock, on the amount thereof; this requirement being disregarded, there could be no regular organization. [1 Caine's Cases in Error, 86, 94 and 9; 11 and 14 Johns. Rep. *ut supra;* 14 Serg't & R. Rep. 434; Ang. & A. on Corp. 64, 276; 6 B. & C. Rep. 341;] and the plaintiff cannot maintain an action, [2 Stew't Rep. 175.]

4. The acts of the defendant do not estop him from insisting that the plaintiff has no corporate existence; for they cannot make the plaintiff a corporation, but as already said, a compliance with the conditions of the statute can alone invest it with the power to contract and sue. [10 Mass. Rep. 384; 14 Mass. Rep. 286.] The case cited for plaintiff, from 16 Mass. Rep. 94, was in relation to a contract with a corporation duly organized, and as we insist, not applicable. The statutes of 1838, and 1841, do not make the plaintiff a corporation, the latter was passed after the suit was brought.

5. The defendant's counsel having declared, that his knowledge of the certificate of stock was as counsel, the court properly refused to coerce a further answer. [1 Porter's Rep. 433.]

6. The first call made on the stockholders according to the

evidence set out in the bill of exceptions, was in 1839, after the defendant's withdrawal from the company. It is then fairly inferrable that the debts of the association were contracted after the defendant dissolved his connection with it. This being the case, there is no petence for saying that he could not withdraw to the prejudice of creditors.

7. If the demurrer to the three first counts was improperly sustained, the plaintiff has not been prejudiced, but has had the benefit of them under the common counts, and cannot therefore insist on the error in the judgment upon demurrer.

The defendant's counsel also cited, 13 Serg't & R. Rep. 256; 8 Johns. Rep. 378; 14 Id. 416; 8 Wend. Rep. 267; 15 Id. 316; 8 Mass. Rep. 138; Ang. & A. on Corp. 303, 4, 9, 10, 11.

COLLIER, C. J.—1. The act of the 22d December, 1836, "to incorporate the Selma and Tennessee Rail Road Company," among other things provides, that there shall be established a company with a capital of twelve hundred thousand dollars, in shares of one hundred dollars each; for the purpose of constructing a rail road from, and to, the points mentioned in the first count of the plaintiff's declaration. That books of subscription to the stock of the company, shall be opened under the superintendence of certain persons, who are particularly named. That the subscription for stock, shall be paid as follows, viz: "five dollars on each share, at the time of subscribing, and the remainder at such time as the directors hereafter mentioned may appoint. *Provided*, that not more than ten per cent. shall be called in at any one time, and twenty days notice given in some public newspaper for the payment of each instalment." *Further*, "that the said commissioners, or a majority of them shall, after the sum of five hundred thousand dollars of said stock has been subscribed, give public netice in some newspaper for the election of nine directors, who shall be stockholders, at such time and place as a majority shall direct; and the stockholders, either in person, or by attorney, shall meet at the time and place designated, and proceed to the election of said directors, to serve for one year, and until their successors shall be elected, &c." And the subscribers to the capital stock, their successors and assigns are, by the act, created a body corporate, by the name and style of the Selma and Tennessee Rail Road Company, and invested with power

Selma and Tennessee Rail Road Company v. Tipton.

to do all lawful acts incident and pertinent to a corporate body, and which may be necessary and proper for the convenient transaction of its own affairs, &c. It is also enacted, "that if any stockholder shall fail, or neglect to pay any instalment required to be paid, for the period of ninety days next after the same shall be due and payable, the stock on which it is demanded, shall be forfrited to the company, together with the instalments which may have been paid thereon, and a new subscription may be opened to mak up such deficiency as may be caused by the nonpayment aforesaid : *Provided*, that nothing in this section shall be so construed as to prevent the President and Directors of said rail road company from offering for sale the stock of any defaulting stockholder, or so much thereof as may be necessary to pay such defalcation, after giving twenty days notice of the time and place of said sale, in some newspaper, and out of the proceeds of said sale, after paying the amount of such defalcation, which may be due and unpaid, with all costs, the residue, if any, shall be paid over to the said defaulting stockholder."

We have recited this much of the charter, because it is material to an examination of the declaration. The questions arising upon the defendant's demurrer are, 1. Will an action lie upon a subscription for stock, such as that declared on? 2. Conceding that an action is maintainable in such case, are the three first counts sufficient in law?

1. There can be no question but an action of *Assumpsit* may be brought upon the defendant's subscription for stock, unless it is impliedly or expressly inhibited by the act under which the plaintiff claims a corporate existence. Such was held to be the law in Beene v. The C. & M. Rail Road Company, [3 Ala. Rep. N. S. 660.] In that case, the charter of the company provided, that "on failure of any stockholder to pay the amount due upon his, her or their stock, in pursuance of any call made by the President and Directors as aforesaid, within sixty days after such call, they shall be authorised to sell said stock: *Provided*, the same can be sold at not less than par value, for the amount so due." It was insisted that the corporation had no other remedy to coerce the stockholders to pay for their stock than to sell the same as the act prescribed; but this court considered that remedy to be merely cumulative, and not at all affecting the right to sue upon the direct promise to pay. So also in Instone v. The

Frankfort Bridge Company, [2 Bibb's Rep. 576.] The charter
declared, that if an instalment required on any share should
not be paid at the time prescribed, the right or interest of
the holder thereof, should be sold at public auction, &c. It ap-
peared that the shares on which instalments were sought to be
recovered, had been offered, but not sold for want of bidders.
The court said, that " the provision of the act giving to the com-
pany the right to sell the shares of a delinquent subscriber does
not amount to a negative of their right to any other remedy,
seems equally clear. The provision is in the affirmative, and it
is a maxim of the common law, that an affirmative statute does
not take away the common law." Again: " it is further argued,
that as the company have elected to proceed under the act by
exhibiting for sale the shares subscribed by the defendant, they
are precluded from resorting to a suit at law. Had the shares
been sold, their right to sue the defendant would without doubt,
have been destroyed. But an unsuccessful attempt to sell, must
surely be attended with a different effect. In that case, his right
to the shares and to the immunities and emoluments attached to
them remained; and therefore, according to the dictates of law,
as well as of common sense, his obligation to pay could not be
extinguished."

And where an action was brought by an incorporated com-
pany against a defendant on his subscriptions for stock, it appear-
ed that the company were authorised by the act of incorporation to
make calls upon the stockholders for the sums respectively sub-
scribed by them, in such proportions, and at such times as the di-
rectors saw fit, *under penalties of forfeiture* of the shares sub-
scribed, and of the previous payments made thereon; it was held,
1. That the company, might, in case of non-payment *proceed by
suit* to recover the amount of the calls, or declare a forfeiture of
the stock. 2. Even *after suit brought*, they might declare a for-
feiture, and it could not be pleaded in bar of the *further mainte-
nance of the suit*, where the value of the stock forfeited is not
equal to the money due the company; and such plea, to be good,
should contain an averment of equality of value. But if the stock
forfeited, be less than the sum due, the defendant should be al-
lowed its value in diminution of the recovery against him. The
right of forfeiture was regarded as a cumulative remedy, and
governed by the same rules, as if it it had been provided for by

the agreement of the parties. "It is the same as if the defendant, in addition to the promise of payment, agreed that on default, the directors of the company should have power to declare the forfeiture of the stock; in other words, that the company might resume their title to the stock sold. The effect of such a proceeding is perfectly well settled in every department of business. When the mortgagee of real or personal estate takes the thing pledged and sells it, or finally converts it to his own use, he is paid so much only towards his debt as the thing *sold for*, or *was worth* at the time of the conversion. [Globe Ins. Co. v. Lansing, 5 Cow. Rep. 380; Lansing v. Goelet, 9 Id. 346, 352, 353; Spencer v. Ex'rs of Harford, 4 Wend. Rep. 381; Case v. Boughton, 11 ld. 106.] And where the equity of redemption is released, or a strict foreclosure resorted to in any form, then so much is paid as the value of the thing mortgaged, at the time when the title becomes absolute in the mortgagee amounts to. [Spencer v. Ex'rs of Harford, 4 Wend. Rep. 331; Morgan v. Plumb, 9 Id. 287."] It was then concluded, that the forfeiture of the stock, which was but another name for forclosure was not necessarily an extinguishment. [Herkimer M. & H. Co. v. Small 21 Wend. Rep. 273.]

But it is insisted that the case at bar is distinguishable from those cited, in the positive and peremptory terms which are employed in the act in respect to a forfeiture of stock; here the language is imperative, and declares, that upon neglect to pay any instalment demanded, the stock " shall be forfeited to the company, &c." and that the *proviso* does not impose upon them the necessity of selling, but makes it discretionary with them. This argument cannot be maintained. A subscriber cannot speculate upon the chances of a rise in stocks, and if the enterprise promises to be unprofitable, elect at his pleasure, to avoid a direct promise to pay by failing to meet calls made under the authority of the charter. In legal effect, there is no difference between the provision considered in the case in 21 Wen., and the 17 section of the act before us; under "*penalty of forfeiture*," and "*shall be forfeited*," in the connection in which they are found, are equivalent expressions. All forfeitures consequent upon the non-performance of some act or duty are regarded as penalties, and if absolute at law, are usually relieved against in equity.

In the cases cited from 3 Ala. Rep. and 2 Bibb, though they

do not expressly declare a forfeiture of stock to be a consequence of the subscriber's delinquency, yet the acts of incorporation, which were there examined, authorised a sale of stock upon the failure to pay an instalment. Now as such a sale could only have been made so as to pass a title to the purchaser, upon the supposition that the legal tittle had revested in the company, the authority to sell, implies a forfeiture, and will be quite as potent in its consequences as if it was expressed. The provision, notwithstanding its terms, when literally interpreted, may favor such an idea, does not authorise the company to appropriate to itself any stock on which calls shall not have been met without accounting to the proprietor to the extent of its fair market value. Such an enactment in Herkimer M. & H. Co. v. Small, was aptly assimilated to a mortgage in its effects; that by the neglect to pay an instalment, there was a forfeiture at law, and a sale might be made of the stock as a means of enforcing payment; if it sold for more than was due, the stockholder should be entitled to the excess, if for less, the company might recover the deficiency. The terms of the 17th section, are substantially those usually employed in a mortgage, and are annexed to the contract by which one becomes a subscriber for stock, quite as directly as if a lien had been given by deed to the company; and in our judgment their legal interpretation and effect must be as a mortgage, and nothing more.

It is however, argued, that the case of the Trustees of the University v. Winston, [5 S. & P. R. 17,] is a direct authority to show that the forfeiture of stock was absolute under the charter, by the election of the subscriber not to pay an instalment, and was exclusive of every other remedy by the company. In order to test the justness of this argument, we will briefly examine the case cited. That was an action of debt upon several bonds, executed by the defendant, for the payment of money at different times, in consideration of the purchase of several tracts of land of the plaintiffs. The lands were a part of those granted to this State by the Federal Government, for the establishment of a " Seminary of learning." The act which incorporated the board of trustees, and invested them with the legal title to the lands, among other things provided, that if a purchaser of any tract of land from the trustees, should " fail to make punctual payment of the amount of any one of the instalments which may become due on said tract

of land, the land shall be *absolutely forfeited* to the said trustees with the money paid thereon;" and the trustees are authorised after the expiration of three months, to dispossess the person in possession, by a writ of unlawful detainer, &c. *Provided,* that the purchaser or his assignee may, within three months after the first instalment falls due, which is unpaid, execute a bond or bonds with sufficient personal security for the payment of each of the remaining instalments by the time they respectively become due; and in such case, the land shall remain in the possession of such purchaser or his assignee. The question was, whether the plaintiffs could maintain their action, and the court held, 1. That the act of the legislature incorporating the Trustees of the University, made them a public corporation, and was subject to modification by the authority which enacted it. 2. That the statutes which provided for the sale of the lands imposed an *absolute forfeiture* as the consequence of a failure to pay the purchase money with punctuality, and that no suit could be sustained upon a bond, un-. less it was commenced within three months after its maturity. *The grounds upon which the conclusion on the second point rests,* are these: the legal title to the University lands was vested in the State; for their sale and every thing connected with it, it was within the competency of the legislature to provide; this being the case, and the acts upon the subject being public laws, they were operative *proprio vigore* to annul the contract of purchase without any act done on the part of the trustees, where the conditions they prescribed were not complied with. The same principle is perhaps more clearly if not more happily expressed in the subsequent case of Gill v Taylor [3 Por. R. 185] " There" say the court, "is a distinction between forfeitures at common law and under statutes. The rule of the former requires the party entitled to the forfeiture, to do an act which the law directs, to derive any benefit from the forfeiture. But a statute prescribes that a forfeiture shall be the consequence of an act, which is prohibited by it, or of an omission to do what is required; any one who may incur a forfeiture will be deprived of all his interest in, and title to the estate upon which the forfeiture operates, at the time the forfeiture accrued, and is disabled by law, from retaining the title or other interest, until the party entitled to the forfeiture, shall assert his right to it. The common law allows a discretion, and gives a forfeiture to the party entitled to it if he choose to take it. But such a

statute gives no discretion; it determines the will of the party entitled to the forfeiture, and makes the act when it is done or omitted an absolute and complete forfeiture." [See also Kennedy and Moreland v. The heirs of McCartney, 4 Porter's Rep. 157; U. S. v. Grundy & Thornbugh, 3 Cranch's Rep. 350, *et post*; U. S. v. 1960 bags of Coffee, 8 Cranch's Rep. 404; Fontaine v. Phœnix Ins. Co. 11 Johns. Rep. 300; Kennedy v. Strong, 14 Johns. Rep. 131.]

Notwithstanding the generality of the terms in which the court expresses itself *arguendo,* in the cases cited, it is apprehended that no case can be found where a forfeiture declared by statute in favor of an *individual or private corporation,* which is but an artificial person, vests a right, or confers a title, unless the party entitled shall so elect. In all the cases cited to this point, it will be found that the legislature had signified in advance, the consequence of a future act or omission, so far as the *public* were concerned; and this was regarded as equivalent to a subsequent election: wherever it is left to the discretion of some *public agent* to treat the act or omission as a forfeiture; in order to give to it that effect, he must make known such an intention. True, there are cases in which it has been held, that a provision in an act chartering a private corporation, authorising the sale of stock for the default of a subscriber in paying the amount of his subscription, is an implied inhibition of the right to sue for calls made by the company. But these cases are not placed upon the ground, that the stock by the non-payment of calls revests in the company, *eo instanti;* they rest upon the familiar maxim, *expressio unius, exclusio est alterius,* viz: by giving one remedy, the legislature impliedly excluded every other.

Without considering at greater length the effect of the 17th section of the charter, we will close the view which we have thought proper to take of this branch of the cause, by adding to the citations already made, several others upon the right of a corporation to maintain an action on a subscription for its stock.—— [F. G. Company v. Alexander, 2 N. Hamp Rep. 380 ; Goshen Turnpike Co. v. Hartin, 9 Johns. Rep. 217 ; Dutchess Cotton M. Co. v. Davis, 14 Johns. Rep. 238 ; Taunton & So. Boston Turnpike v. Whiting, 10 Mass. Rep. 327 ; Middlesex Turnpike Corporation v. Swan, Id. 384 ; Franklin Glass Co. v. White, 14 Mass. Rep. 286 ; Chester Glass Co. v. Dewey, 16 Mass. Rep.

94; New Bedford & B. T. Corporation v. Adams, 8 Mass. R. 138; Salem M. D. Corporation v. Ropes, 6 Pick. Rep. 23; Central T. Corporation v. Valentine, 10 Pick. Rep. 147; Essex B. Co. v. Tuttle, 2 Verm. Rep. 393; Grays v. Turnpike Co. 4 Rand. Rep. 578; Tar River N. Co. v. Neal, 3 Hawks' Rep. 520; Worcester T. Co. v. Willard, 5 Mass. Rep. 80; The Bear Camp River Co. v. Woodman, 2 Greenl. Rep. 404; Phillips L. Academy v. Davis, 11 Mass. Rep. 113.]

It is further insisted, that the demurrer was properly sustained; because it does not appear from the declaration that the plaintiff had become a body corporate, authorised to sue, &c.: neither does the defendant's subscription for stock constitute a valid contract, nor is an express promise to pay alleged. In each of the three first counts, it is stated in general terms that the plaintiff is a corporation, in virtue of an act of the Legislature, and an organization thereunder, as required. But this mode of declaring is objected to, and it is said that the manner of organization should be specially alleged, that the court itself may determine whether the law has been complied with.

In the President, &c. of the U. S. Bank v. Haskins, [1 Johns. Cases, 132,] on a demurrer to the plaintiff's declaration, it was contended that the act incorporating the Bank was a private act, and should have been set out *in extenso*. But the court were of opinion, whether the plaintiff was a public or private corporation, it was not necessary to set forth the charter, or the names of the individuals composing the company. And in Grays v. Turnpike Co. [4 Rand. Rep. 578,] it was said, that although it is part of the case of a corporation which sues, to make out, under a proper issue, its corporate existence, yet "they need not indeed set forth in their declaration, by way of averment, how they were a corporation." To the same effect are Angell & Ames on Corp. 377; Bank of Utica v. Smalley, [2 Cow. Rep. 778.] The case of Harrison v. Wilson, [2 A. K. Marsh. R. 550,] determines no question adverse to the sufficiency of the declaration. It decides, that a plea should not aver matter of law and fact; but it should set out all the facts from which the law is deducible, leaving the law thereon to the court.

It is laid down in many cases, some of which are included in the citations already made, that the interest acquired by subscribing for shares in the stock of an existing incorporated company,

is a good consideration to support an action against a subscriber. It might well be inferred from what we have already seen, that where a person who becomes a stockholder of an incorporated company by signing an agreement with other subscribers, by which they promise to pay a specific sum for every share set op. posite their names, he is liable in an action at the suit of the company. In Instone v. The F. B. Co. [2 Bibb, 576,] it was held, that in an action by a corporation against a subscriber of stock, no other consideration need be shewn than the subscription according to the terms of the charter; that imposing a legal liability, the law implies a promise to pay. Chitty says, " It has been considered, that where the contract is founded upon a legal liability, and implies a promise, it is sufficient to state such liability, without alleging formally that the defendant promised, as in assumpsit on a bill of exchange ; and an agreement between two parties, but omitting the mutual promises, was held sufficient, because the agreement imported a promise." [1 vol. on Plead. 298.] If the authorities cited, as to the allegations of the counts demurred to, are to be recognized as laying down the law correctly, and to us they seem well sustained by principle, the conclusion is perfectly clear that the objections taken by the defendant are not well founded ; and that the demurrer should have been overruled.

2. We come now to consider the questions arising upon the bill of exceptions. It is said, that presumptions are applicable as well to corporations as individuals : that persons acting publicly as officers of the corporation are presumed rightfully in office, and all necessary steps presumed, in order to make a corporate act legally operative. So, a charter, from the long exercise of corporate rights, or the acceptance of a new charter from the acts of the corporate officers, as well as many other things, may be presumed from circumstances. [Bank of the United States v. Dandridge, 12 Wheat. Rep. 70, *et post*; The State v. Carr, 5 New Hamp. Rep. 367; in Hagerstown T. R. Comp. v. Creager, 5 Har. & J. R. 125. See also, 1 Pick. Rep. 279 ; Id. 372 ; 17 Mass. Rep. 1 and 479.] the court say, " Where a corporation has gone into operation, and rights have been acquired under it, every presumption should be made in favor of the legality of its existence." [See also, Trott v. Warren, 2 Farf. Rep. 227.] So, in All Saint's Church v. Lovett, [1 Hall's Rep. 191,] held. that where there had been a corporate body *de facto*

for a considerable time claiming to be a corporation and holding and enjoying property as such, it will be presumed that all merely formal requisites to the due creation of a corporation, have been complied with.   [See also, U. S. v. Amedy, 11 Wheat. R. 392.]

Although it has been repeatedly held, that a person sued by an association, claiming to be a corporation, may throw upon the plaintiff the burthen of proving their corporate existence, yet it has been decided whenever the point has been made, that a charter cannot be adjudged void in an indirect proceeding.   Thus, where an act of the legislature provided, that when six hundred shares had been subscribed, the commissioners should certify that fact to the Governor, who should incorporate the subscribers, &c. The certificate was made, and the charter granted; whereupon, the government subscribed twenty thousand dollars; when, in truth, three hundred shares of the number required, were fictitious stock, subscribed for the purpose of deceiving the Governor, and thus procuring the charter.   On these facts, it was said, "If this charter was deceptively obtained—obtained by false representations, it could not, in a collateral action, in an action brought by the company to compel the performance of contracts entered into with it, be declared void.   But if this charter had been fraudulently obtained, on which I am not called upon to give any opinion, still until that question had been directly decided, in a proceeding instituted in this court, which alone has jurisdiction, either by *scire facias*, to repeal the charter, or declare it forfeited, or by a writ of *quo warranto* at the suit of the State, in which the State must be a party, and a party to the judgment for the seizure of the franchise, there is no instance of calling in question the right of a corporation, for the purpose of declaring its charter void, but at the instance, and on behalf of the government, and never on the relation of any individual."  [The President, &c. of the K. & C. Turnpike Road Co. v. McConaby, 16 Serg. & R. R. 145.]   After laying down the law in terms quite as explicit, in the State v. Carr, [5 N. Hamp. R. 371,] the court say, "in cases of this kind, it is enough to show that there was a charter under which the corporation was acting; and that it was wholly immaterial whether the corporation had complied with the requisitions of the charter or not.   That is a matter to be settled in a suit between the government, which created the corpora-

tion, and the corporators, and not collaterally, in a prosecution by another State against a stranger to the corporation."

In the Tar River Nav. Co. v. Neal, [3 Hawks' R. 520] it was decided, that where, by a charter, commissioners are directed to ascertain the performance of a condition precedent to incorporation, and they declare it, though falsely, to have been performed, it shall be deemed true, until the sovereign power interposes. A wrong doer, sued by the corporation, cannot show the falsity of such declaration. [Grays ҫ. Turnpike Co. 4 Rand. Rep. 578 ; Bear Camp River Co. v. Woodman, 2 Greenl. Rep. 404 ; Charles River Bridge v. Warren Bridge, 7 Pick. Rep. 371 ; Vernon Society v. Hills, 6 Cow. Rep. 23 ; Lehigh Bridge Co. v. Lehigh Coal, &c. Co. 4 Rawle's Rep. 9 ; Chester Glass Co. v. Dewey, 16 Mass. Rep. 101 ; see also, 2 Blackf. Rep. 367 ; 8 Greenl. R. 372.] The decision of this court, in Carlisle v. Cahawba and Marion R. R. Co. at the June term, 1842, is not opposed to the law as stated in the cases cited. That was an action brought for the recovery of calls made upon a subscription for stock. The charter did not, *per se*, consummate the corporate powers of the company, but authorised the President, &c. to require instalments to be paid upon the stock, when they should have organized agreeably thereto. It was held, that to entitle the plaintiff to maintain their action, it should be shown that the organization had taken place as required ; but the court do not say that this may not be inferred from circumstances where there are such as to warrant the inference ; nor that an organization *de facto* is insufficient to authorize a recovery. The charter expressly required, that after the stock was apportioned according to subscriptions, then the stockholders should meet at a time and place designated, and elect directors, &c. This was a condition precedent to the right to require payments to be made for stock, and was just as much a part of the subscriber's contract, as if it had been recited therein in *totidem verbis*: and unless it had been performed by those whose duty it was to act, or in some manner waived by the subscribers, it would follow upon principles of reason and justice, that the company could not maintain an action. In the present case it is not denied, that an organization of the company, as provided by the charter, is necessary to the plaintiff's right to sue, but it is insisted that if this has been done, though irregularly, and especially with the approbation of the defendant, as manifested by his

acts, he is bound to pay for his stock  To the consideration of this argument we will now address ourselves.

We will not inquire whether the payment of five dollars upon each share of stock, at the time of subscription, was indispensable to entitle the subscriber to become a corporator, or whether the money may be substituted by a note or bill.  That there are cases which go the length of affirming the necessity of making such payment, and in cash, has not been controverted.  [See Highland T. Co. v. McKean, 11 Johns. Rep. 100 ; Goshen T. Co. v. Hurtin, 9 Id. 218 ; Hibernia T. Co. v. Henderson, 8 Ser. & R. Rep. 219 ; Ogle v. Somerset, &c. Co. 13 Id. 256 ; Grayble v. York, &c. Co. 10 Id. 269 ; Leight v. Susquehanna, &c. Co. 14 Id.  See also Union T. Co. v. Jenkins, 1 Caine's Rep. 391, dissenting opinion of Lewis, Ch. J. and 1 Caine's Cases in Error, 86, which was sustained.]  The view which we take of the case before us will relieve us from the necessity of considering what may be the law on this point.  The facts embodied in the bill of exceptions we think, place the defendant in a situation which deny to him the right of insisting that his subscription was not made in the manner prescribed by the charter.  His participation in the organization of the company, his assent to treat it as a corporation as indicated thereby, and still more strongly by the payment of his note given for the five per cent., and the acceptance of a place in the directory, all seem to show that he regarded the plaintiff as a corporation, liable to all burthens and entitled to all privileges which the charter provided.  Under such circumstances, both law and reason concur in saying that the defendant shall not be permitted to object that his subscription for stock does not oblige him to pay the amount, because he had not paid a part of it, at the time he should, or because the plaintiff should not have organized and assumed the exercise of corporate functions.  In Hampshire v. Franks, [16 Mass. Rep. 87,] it is said, " No man can be compelled by the legislature to become a member of a corporation without his consent ; yet if he do consent, and even not expressly, but by implication, he cannot afterwards deny his liability to the lawful exactions of the corporation, on the ground, that he did not solicit the privilege, and was no party to it when granted."  [See 2 Mass. Rep. 269 ; 2 Rawles' Rep. 359.]  And in Commonwealth v. Worcester T. Corporation, [3 Pick. Rep. 327,] the question was, whether the road was part of the turn-

pike of the corporation. It appearing that they had received toll from persons travelling thereon, the court said, "It is not for them to object that the road as made has never been accepted, for that would be to aver their own wrong or negligence in excuse for the omission of a duty. The fact of receiving toll, is as to them, conclusive evidence of their liability for repairs."

Not only estoppels, tecinically so called, but estoppels *in pais*, operate both for and against corporations; and it may be laid down generally, that a party will be concluded from denying his own acts or admissions, wiich were expressly designed to influ-influence the conduct of mother, and did so influence it, and when such denial will operate to the injury of the latter.— [Welland Canal Company v. Hathaway, 8 Wend. Rep. 483; Chester Glass Co. v. Dewy, 16 Mass. Rep. 101. See also, Lucas v. The Bank of Georgia, 2 Stew't Rep. 147.] Under the influence of this rule, it has been held, that a person entering into a contract with a compny under their corporate name, can not object that they had not been regularly constituted a corporation. [Dutchess C. M. v. Davis, 14 Johns. Rep.] And where an act of the legislature give to individuals a corporate capacity, upon the performance of certain acts, a person contracting with these individuals, by their coporate name, will not be permitted to deny the performance of those acts necessary to constitute them a corporation. [Hamtamck v. Bank of Edwardsville, 2 Missouri Rep. 169.] But the case of the President, &c of the K. & C. Turnpike Road Co. v. McConaby, [16 Serg. & R. R. 140,] cited to another point, is more strikingly applicable upon the question of estoppel. There the court decided, where a charter has been obtained by means of fictitious subscriptions for part of the stock, and a fraud has been committed on a real subscriber, by which he has sustained or might sustain injury, no action can be maintained against him by the corporation, for the amount of his subscription; but where such subscriber has accepted the charter, and by his own acts put it in operation, he cannot avail himself as a defence, of the fact, that part of the stock was fictitious.

Having attained the conclusion, that the facts stated in the record, estop the defendant from insisting that five per cent. was not paid upon the stock for which he subscribed, at the time of subscription, we have to inquire whether it was competent for

him, by an announcement of his withdrawal from the company, to absolve himself from liability to pay any further instalment which might be demanded of him. It will result from what has been already said, that such a privilege is not accorded to a subscriber. This conclusion necessarily follows, if, as we have seen, he is liable to the action of the corporation, and cannot force them to resort to the remedy afforded by the charter, of claiming a forfeiture of stock. Besides, the subscription for stock, as it entitles the subscriber to all the benefits and immunities of a corporator is a valid contract, and of consequence obligatory upon him until it has been rescinded according to law. In the case of Kidwelly Canal Co. v. Raby, [2 Price's Rep. 93,] it was held, that one of several persons who have subscribed an agreement *inter se*, to promote a joint undertaking, or common purpose, cannot withdraw his name and discharge himself from the engagement, without the consent of the rest of the subscribers. And if an act of Parliament have been passed for effectuating the purpose of the undertaking, by which certain obligations are created, such original subscriber is not exonerated from the liabilities imposed by the *act*, by having, during the progress of the bill, renounced before the committee, all further connection with the undertaking, and desired that his name might in consequence be omitted in the *act;* nor can the circumstance of his name being omitted have the effect of disengaging him. [See also Martyn v. Hynd, Doug. Rep. 142; Religious So. v. Stone, 7 Johns. Rep. 112; Pres't &c. of the B. and South Amboy T. Co. v. Imlay, 1 South. Rep. 285.] And in Marcy v Clark, [17 Mass. Rep. 330,] it was decided that the stockholders being made liable by an act of the legislature to the payment of the debts of the corporation, one of them could not by a fraudulent transfer of his shares avoid such liability. [See also United Society v. Eagle Bank, 7 Conn. Rep. 456.]

We have already drawn this opinion greatly beyond what we had expected; and will decline the consideration of the remaining questions raised by the bill of exceptions, inasmuch as they are embraced by those considered, or will not probably arise in the ulterior progress of the cause. Without undertaking a special application of the points examined, to the bill of exceptions, or to recapitulate to any extent, (as the errors pointed out have been

made sufficiently apparent,) we will only add, that the judgment of the circuit court is reversed, and the cause remanded.