JAMES B. DAYTON, Receiver, &c., *v.* JOHN B. BORST, Appellant.

The organization of a banking corporation, and the subscription of the defendant to the capital stock thereof, creates a legal liability on his part to pay the corporation the amount of his subscription.

The capital stock of a bank is a trust fund for the security of its creditors; and the legal liability of a subscriber to its capital stock may be enforced to the extent necessary to liquidate its debts, &c.

THIS is an action brought by the plaintiff, as receiver of an insolvent bank, organized in the State of New Jersey, to recover of the defendant the amount of his subscription to the capital stock of said bank. The judge, who tried the action without a jury, found, as matter of fact, the organization of the bank pursuant to the laws of the State of New Jersey, and that the defendant, together with six other persons, made, under their hands and seals, on the 24th of November, 1851, a certificate, and duly acknowledged the same, declaring and setting forth, among other things, that the capital stock of the bank subscribed was $50,000, divided into two thousand shares of $25 each, and that the defendant had subscribed for one thousand nine hundred and ninety shares, amounting to $49,750; that one of the other subscribers to said certificate had subscribed for five shares, amounting to $125, and that each of the other five subscribers had subscribed for one share, amounting each to the sum of $25.

That on the 6th day of July, 1853, the plaintiff was duly appointed receiver of said bank, with power to sue for, collect, receive and take into possession all the goods, rights and credits of said bank, and that said plaintiff had duly accepted said appointment.

That said defendant has never paid said stock subscription so made by him, or any part thereof.

That there is due from said bank to one Edward J. Tinckham the sum of $5,647.94 with interest at six per cent from November 1, 1853, the whole of which remains unpaid. That said bank, on the 6th day of July, 1853, became insol-

vent; and as a conclusion of law, that the plaintiff was entitled to judgment for the amount of the judgment in favor of Edward J. Tinckham against the bank, and interest from the date of its recovery, and costs of this action.

Judgment was thereupon rendered against the defendant, and the same was affirmed at the General Term of the Superior Court of New York.

DAVIES, J. Upon the facts found by the court, the judgment rendered in this action cannot be disturbed. The fact of the organization of the corporation, and the defendant's subscription, created a legal liability on his part to pay to the corporation the amount of such subscription. This liability could be enforced, to the extent necessary to discharge and liquidate any debts or liabilities of the bank. The capital stock of the bank was a trust fund for the security of its creditors. (*Mann* v. *Pentz*, 3 Comst., 415; *Case* v. *Grant*, 15 Mass., 505; *Spear* v. *Grant*, 16 id., 92; *Wood* v. *Dummee*, 3 Maine, 308; *Nathan* v. *Whitlock*, 9 Paige, 152.) In the latter case, which was an action by a receiver to collect an unpaid balance upon a subscription to capital stock, the chancellor said, it was a suit to collect a debt which was still due from the defendant to the corporation. The principle decided by these cases is, that when there are debts of a corporation unpaid, the creditors of the corporation might, in proper actions, compel such stockholders to refund sufficient to pay these debts. The fifteenth section of the act of New Jersey, under which this bank was organized, declares that any number of persons, not less than seven, might associate to organize a bank, but that the aggregate amount of the capital stock of such association should not be less than $50,000. The sixteenth section of said act declares that the persons so associating shall, under their hands and seals, make a certificate, by the terms of which said association shall be bound, which shall specify the name assumed, and, among other things, the amount of capital stock of such association, and the number of shares into which the same shall be divided, the the names and places of residence of the shareholders, and

the number of shares held by each of them respectively. In the case of *The Rensselaer and Washington Plankroad Company* v. *Burton* (16 N. Y., 457), it was also objected, as in this case, that the defendant had not subscribed to any paper agreeing to take and pay for any designated number of shares, and that, therefore, no liability was created to pay for the same. In that case the action was sought to be maintained on proofs of the defendant's subscription to the articles of association, similar in all important particulars to those in the present action. In *Small* v. *The Herkimer Manufacturing Company* (2 Comst., 330), Judge GARDINER said : " The subscription must be construed, therefore, as if all the provisions of the statute affecting the liability of the subscriber or his title to the stock purchased by him was incorporated in his agreement." Judge RUGGLES, in delivering the opinion of the court in the case against Burton (*supra*), inquired : " Does not the subscription of the defendant to these articles of association, when construed in connection with this provision, distinctly import that the defendant has taken or subscribed for the number of shares set opposite his name ?" It admits, he says, of no other interpretation. If this be the true construction of the act of the defendant in subscribing, then it follows, from the principles already established, that he undertook to pay for the shares of the stock thus taken, according to the provisions of the act. The justice of these principles is apparent from the nature of the contract, which is, simply, a sale of so much stock by the company to the subscriber, and, like every other contract of sale, only requires that enough should be said or done to show that one party makes an offer to sell, which the other party accepts. If there is a sale, then no promise in terms to pay is required, such a promise being inherent in, and inseparable from, the contract of sale.

But it was contended in that case as it is here, that the promise, if any, is implied merely, and that nothing short of an express promise to take and pay for the stock, will subject the party to an action. But such objection is answered by the cases of *The Hartford & New Haven Railroad*

*Company* v. *Kennedy* (12 Conn., 500), and *The Northern Railroad Company* v. *Miller* (10 Barb., 260), where it was overruled in both cases. In the former case Judge HUNTINGTON says: "But if the thirteenth section provides the only remedy to enforce the payment, and therefore excludes an implied promise, it is not readily perceived why it should not cause an express promise to be legally inoperative. There is no other consideration to support the latter than that which sustains the former. It is precisely the same in both. The moral obligation to pay is equally strong in both." In the latter case, Mr. Justice WILLARD holds similar language. He says: "There can no case be found where the courts of this State have made any distinction between an express and an implied promise, with reference to the question we are now considering. They both plainly stand upon the same footing. If an action will lie in one case, it will in the other." And in the case of *The Lake Ontario Railroad Company* v. *Mason* (16 N. Y., 451), the doctrine of these cases received the approval of this court, where it was held that the signature to a paper which states that the subscribers thereby associated themselves, in pursuance and by virtue of the general act for the incorporation of turnpike and plank road companies, which gives the name of the proposed company, the amount of its capital stock and the number of shares, imports a promise upon which an action may be maintained, to take and pay for the number of shares set opposite to the subscriber's signature.

It is urged that the receiver, appointed under the laws of the State of New Jersey, cannot maintain an action against a stockholder of a corporation, to recover any unpaid subscription without showing some statute of that State authorizing such proceedings. It is urged that as we have a statute of this State, which confers express power upon a receiver to recover sums which may be due upon shares of stock subscribed in the corporation upon which they are receivers; this action cannot be maintained, unless like authority is shown to have been conferred upon this plaintiff by the statutes of New Jersey. But this ground is untenable. We

have seen that it is found as a matter of fact by the court, that the plaintiff has power to sue for, collect, receive and take into possession all the goods, rights and credits of the said bank. Now, it has been conclusively shown that the defendant is a debtor to the bank to the amount of his subscription to the capital stock of the bank. Such debt is a credit of the bank, and therefore the receiver has full power and authority to receive and collect it. The defendant cannot object that he claims to recover less, and has judgment for less than the whole amount he is entitled to recover. The court properly limited the recovery to the amount of the debt of the corporation.

It is not an open question in this court, whether the bank was or was not indebted, or what was the amount of its indebtedness. It is found as matter of fact by the court, that on the first of November, 1853, the bank was indebted to one Tinckham in the sum of $5,647.94, and that the whole of said indebtedness remained due and unpaid on the day of the trial of said action. There is no materiality, therefore, in the discussion here, whether the judgment of Tinckham was *prima facie* or conclusive evidence of such indebtedness. It is only pertinent to the questions presented for adjudication here, that there was indebtedness on the part of the bank, and if there was, then the defendant was liable to pay, on account of his indebtedness, a sum sufficient to liquidate and discharge such indebtedness. The fact and amount of such indebtedness are conclusively established by the finding of the court which tried the action, and as the defendant has been adjudged to pay only sufficient to discharge such indebtedness, no error prejudicial to him has been committed.

The proceedings for the appointment of the receiver appear to have been in all respects regular, but so far as this court is concerned with that question, it is disposed of by the finding of the court, that he was duly appointed receiver of said bank by the Court of Chancery of the State of New Jersey. This court will not examine the evidence to ascertain whether this finding is sustained by it. It must be assumed to be, and, therefore, we regard the plaintiff as duly appointed, with

full power to act as such. Upon these facts, the defendant stands in the position of a debtor to the bank to a large amount. The bank is proved to be insolvent, and indebted to a creditor to a far less amount. The receiver, whose duty it is to collect and receive the credits of the bank, calls upon the defendant to pay, on account of such indebtedness, an amount sufficient to pay off and liquidate such indebtedness of the bank. He has a judgment therefor, and the same must be affirmed with costs.

All the judges concurring,

Judgment affirmed.