# OLIVER P. C. BILLINGS, AS RECEIVER, ETC., APPELLANT, *v.* GEORGE C. ROBINSON, RESPONDENT.

*Manufacturing corporation — right of its receiver to enforce payment of the amount due from its stockholders — when a stockholder's liability ceases upon the sale of his shares — what acts of the company release him from liability upon his original subscription agreement.*

A receiver of an insolvent manufacturing corporation cannot maintain an action against one who was formerly a stockholder thereof to collect the amount unpaid upon the shares of stock sold and transferred by him, unless the corporation itself could have maintained such an action if it had been brought prior to the time when the receiver was appointed.

Although all the provisions of the statute relating to the sale and transfer of the

shares of stock in a corporation have been complied with, the stockholder will still be liable to the creditors of the company and the other stockholders for the amount unpaid thereon, unless it appears that he sold the stock in good faith, and with the intent and purpose of disposing of his entire interest in the shares and surrendering all dominion over them.

The defendant and others signed a paper by which, among other things, they agreed with the trustees of the Marshall Packing Company, and with each other, that they would take the number of shares of capital stock of the said company set opposite to their respective names and pay for the same at the par value of $100 per share, twenty per cent on or before a date fixed and the balance as called for thereafter by the trustees. Subsequently the company was formed and fifty shares of stock were issued to the defendant. The scrip stated that it was "transferable on the books of the company, in person or by attorney, on the surrender of this certificate." The defendant, after having made certain payments upon the shares, sold and transferred the same, at a time when there were no calls unpaid thereon, to another person, who surrendered the same to the company and received new certificates therefor.

*Held,* that as the assignee of the shares of stock was, under the statute, liable for the balance unpaid thereon, and as the company had assented to the transfer by entering it upon its books, it had thereby released the defendant from the liability imposed upon him by the original subscription papers, and could not, nor could its receiver, maintain an action to enforce the same. (DANIELS, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The Marshall Packing Company was incorporated in the summer of 1877, under the general act authorizing the formation of corporations for manufacturing purposes. (Laws 1848, chap. 40.) Its place of business was the city and county of New York. The capital stock was fixed at $250,000, divided into 2,500 shares, of $100 each. The defendant was a subscriber for fifty shares of the capital stock of the company, amounting to $5,000, for which a certificate was issued to him dated November 10, 1877, the body of which was in the following words:

"This certifies that George C. Robinson is entitled to fifty shares of the capital stock of the Marshall Packing Company, of New York city, transferable on the books of the company, in person or by attorney, on the surrender of this certificate."

Upon which shares he had paid $3,750. He also became the owner of fifty other shares, for which a certificate was issued to him dated November thirtieth, in the same form, upon which he had paid the like sum of $3,750. The balance of these shares have

never been paid into the treasury of the company. Prior to the 17th day of March, 1879, a judgment was recovered against the company in favor of Jeremiah P. Robinson and others, and on the last named day, the plaintiff was appointed receiver in that action, under the provisions of the statute for winding up insolvent corporations. There was no statement in the papers before the court stating when this judgment was rendered, the amount thereof, or the time when the debt was contracted upon which the judgment was rendered. But no question was made upon the argument but that the receiver's appointment was regular and complete in all respects, so as to authorize him to maintain actions of this character. This action is prosecuted for the purpose of collecting the unpaid balance due upon the shares mentioned in the certificates issued to the defendant. The issues were referred to Hamilton Odell, Esq., to hear, try and determine.

On the 24th day of July, 1878, the defendant sold and transferred the shares which he then held to William C. Marshall, and the same were, on the following day, entered upon the stock-book of the company, as transferred from the said defendant to the said purchaser. The receiver's appointment was after this transaction, and he made a demand upon the defendant to pay him, as such receiver, the balance due upon each of these shares which the defendant declined to pay, and this action was then commenced to enforce collection. The referee reported in favor of the defendant upon the ground that he was not liable to make any contribution towards the unpaid balances, and the plaintiff's claim is, that a report should have been made in his favor for $2,500, being the entire balance due upon all the shares covered by both certificates, or at least he should have recovered $1,250, being the sum due upon the shares for which the defendant was an original subscriber.

The facts and circumstances connected with the negotiations for the sale of these shares, and the mode and manner of the transfer, are more fully given in the opinion.

*James L. Bishop*, for the appellant.

*Lemuel H. Arnold, Jr.*, for the respondent.

BARKER, J.:

Upon the facts, as reported by the referee, the plaintiff failed to maintain a right of action against the defendant.

The plaintiff's claim is this: That at the time of his appointment the defendant was a shareholder in the corporation of which he was receiver, and that there is an unpaid balance due on such shares which the defendant should pay to him, as the representative of the corporation, its creditors and its shareholders.

The defendant disputes this claim of liability to make any further payments on the shares of stock, at one time owned by him, for the reason that before the receiver was appointed he had, in good faith, sold and transferred the same to another person, without any intent to injure or defraud any one interested in the question of the ownership of such shares. That when such sale was made and completed, all prior calls on these shares were paid up and the transfer was in all respects in full compliance with the requirements of the statutes, imposing conditions upon shareholders which must be observed in making the transfer, if the then owner and seller of the shares wishes to escape liability for future calls on the unpaid balance of the stock.

It is important to observe and keep in mind the exact nature of this action, in considering the questions which must necessarily be determined in disposing of this appeal. This is an action at law, brought against the defendant as shareholder, based upon the defendant's promises, and the statutory obligations and liabilities imposed upon shareholders to pay up in full, on such shares of which they may be the owner.

The receiver in this action represents the corporation and its shareholders. In some respects he also represents the general creditors of the corporation, for the debts due the corporation, which he may collect, will constitute a fund out of which their claims can be satisfied, in full or in part.

But, in no sense is this action to enforce any statutory obligations which the defendant may be under to the creditors of the company, by reason of the provision of the statute placing stockholders under a direct legal obligation to them to pay their debts against the corporation. So it becomes necessary to consider how far the receiver,

in his capacity as such, in this action, represents the general creditors of the corporation.

If, upon the facts of this case, the corporation could not, in its own name and behalf, have maintained an action against the defendant, before its effects were sequestrated, then the receiver was properly defeated in making the demand upon the defendant.

By the provisions of the enabling act, authorizing the formation of manufacturing companies, the shares of stock issued by the corporation are declared to be personal property, and the quality of transferability is given them, and it allows the shareholder the privilege of transferring the same to other parties, and when this is done with due observance of the conditions of the act regulating the mode and manner of transfer, and the same is entered into in good faith, the liability to pay future calls ceases, and the obligation to pay unpaid balances is shifted from the assignor to the assignee.

It is obvious that it was one of the purposes of the act to permit the shareholders to terminate their membership in the corporation before the company should call in its entire capital stock, for the right of the company to demand payment of the unpaid balances is limited to such persons as may stand in the relation of shareholders to the corporation. With this privilege given to a shareholder, he could, at any time, upon observing the conditions of the statute relating to transfers of stock, terminate his membership and make his estate, vested in the shares, available to himself and avoid the obligation of investing more money in the corporate enterprise.

It is one of the features of business corporations, that the membership will be continually changing and the liabilities which the statute imposes upon shareholders will be constantly shifting from one person to another; and all persons who deal with such corporations must be aware of the fact, and the provisions of the statute and the rules of law applicable to transfers, seek only to protect the public from colorable and dishonest transactions.

The act, in terms, imposes only two conditions necessary to be observed, to make a valid sale and transfer. By section 8 (chap. 40 of 1848), all transfers are prohibited until all previous calls thereon are paid up in full or the shares shall have been declared forfeited

for non-payment of calls made thereon. When these transfers were made by the defendant to Marshall, all calls theretofore made were paid and satisfied and no forfeiture had been declared by the company.

The act also provides that no transfer shall be valid for any purpose whatever, except to render the person to whom the transfer is made, liable for the debts of the company, until the transfer shall have been entered on the books of the company, as required by section 25, showing by whom and to whom the transfer is made.

The referee finds the facts as to the mode and manner of the transfer, and the time when the same was completed, and the character of the entries which were made in the stock-book concerning the same, and it is thus made to appear that the statute in this respect was fully complied with.

A careful perusal of the evidence shows that it was sufficient to justify and uphold his conclusions on this subject.

The company opened a stock-book in which an account was kept with the defendant as stockholder, giving his name and place of residence, the number of shares issued to him and when.

On the sale being made, the defendant indorsed the certificates and delivered them over to Marshall, who caused them to be returned to the company and an entry made in the defendant's account on the following day, stating from whom, when and to whom the transfer was made, and the original certificates were surrendered up to the company and attached to the stubs from which they were taken.

This record was sufficiently complete and fully answered the demands of the statute, and the plaintiff's argument that the entry in the books of the company is defective in essential particulars is not well taken. From the books of the company as thus kept all persons could, on every day from the time the certificates were first issued to the defendant until the entry was made recording the sale to Marshall, ascertain, who were the owners and holders of these shares of stock and when they became such owners. The object and purpose of the statute is to give notice to all persons who should be interested in knowing who were the stockholders and when they became such.

Although the provisions of the statute have been literally com-

plied with, the transfer made by the defendant will not be available to him as a protection against liability to the company, its stockholders and creditors, to pay the balance due on the shares which he held unless the transaction was an honest one, entered into in entire good faith, with the intent and purpose of disposing of his entire interest in the shares and surrendering all dominion over them. (*Veiller* v. *Brown*, 18 Hun, 571; *Sanger* v. *Upton*, 91 U. S. Sup. Ct., 56; *National Bank* v. *Case*, 99 id., 628; *Sawyer* v. *Hoag*, 17 Wall., 619.)

This proposition is founded upon an equitable construction of the statute and the general rule of law that all transactions are void and unavailable, as against interested parties, which are not honest and entered into in good faith.

The referee, in the eighteenth finding of fact, has found that the defendant sold the shares of stock held by him to Marshall in good faith and for a good consideration, and that it was intended to be and was an absolute and unqualified transfer. If this conclusion of the referee is supported by the evidence then the judgment entered upon his report should be affirmed. The rights of the parties altogether hinges on the correctness of this finding.

There are very many facts and circumstances in the history of the organization of this company, the manner in which it conducted its business, the action of its shareholders and officers, and in the mode and manner in which this sale and transfer took place which bear upon each side of this question, and which demand a careful examination, with a view of ascertaining whether the balance of the evidence be with the findings of the referee.

We are of the opinion that the conclusion of fact, reached by the referee is the correct one, in view of all the facts and circumstances disclosed by the evidence, and that the creditors of the company and the shareholders who would be benefited by upholding a recovery, have no just claim in law or equity upon the defendant.

No reasonable doubt can be entertained but that the defendant himself acted in entire good faith, and that his conduct was honorable and just towards all the members of the company and its then existing creditors. Nor can it be doubted but that he then knew that if the affairs of the company were then wound up it would

prove to be insolvent in fact, and that he would be exposed to the liability of making further contributions on his capital stock to satisfy the just claims of creditors. It is also equally plain that, if the other stockholders of the company had discharged all their obligations to him and the company, that he would be exempt from making further contributions on his capital stock, and if the affairs of the company had then been wound up, he would have been entitled to a large return upon the payment he had already made.

The negotiations which were had between the defendant and Marshall extended over a considerable period of time, and, while they were pending, it became known to the officers of the company that he was about to transfer his stock to Marshall, and it was completed in presence of the board of trustees, while they were in actual session. That he believed there was value in his stock equal to the amount which the buyer agreed to pay is altogether manifest and bears on the question of his good faith. Marshall, the purchaser, was the owner and patentee of the patent which this company was organized to operate and he was one of its largest shareholders and the general superintendent of the corporation.

The company, at the time of the sale, had some assets, the amount of which is not directly disclosed, and its mercantile indebtedness amounted to about $13,000.

From the evidence and the report of the referee, it is understood that this means obligations due to persons who were not members of the corporation.

Before the defendant would consent to complete the transactions, he exacted from Marshall that funds should be realized by the company equal to this indebtedness, and used in extinguishing the same, and the friends of Marshall to whom the transfer was made did come forward and loan the company this sum, and it was used to pay off this class of indebtedness.

As also bearing upon the question of the defendant's honesty and good faith, and that the sale was not intended to be a sham, it may be mentioned that, at the time of this transaction, $85,000 of the capital stock of the company had been subscribed for, aside from the large amount which was given to Marshall for his patent, and the business which he had established and the property connected therewith, which were transferred to the corporation.

Upon these subscriptions of stock only $27,000 had been paid in. Of this the defendant himself had contributed $7,500 upon 100 shares held for him. Some of the other shareholders, Lowry and Trask, who each subscribed for $50,000, had made proportionate contributions upon their stock, and they, at the same time and upon the same terms, sold out their shares to Marshall, the remaining shareholders being chiefly the promoters of the company.

It affirmatively appears, that at least twelve of the other subscribers to the capital stock of the company whose subscriptions in the aggregate amounted to some $60,000, most of whom were the officers and trustees of the company, had made no payments whatever upon their stock, nor received certificates therefor.

A recovery from the defendant for the unpaid balances due upon the shares of stock which were transferred, would be for the benefit of the creditors of the company, and its shareholders. If an inspection of the evidence discloses that those who are now the creditors and shareholders of the company have no just claim in equity upon the defendant as a shareholder, it will be a circumstance to be applied with great force in upholding the conclusion that the defendant acted in good faith. It satisfactorily appears, if it cannot be said to be conclusively proven, from the record before us, that none of the creditors of the company, now existing, held their obligations at the time of this transaction. There is no proof in the case whatever as to the amount of the judgment in the action in which the plaintiff was appointed receiver, or when the debt for which it was rendered was created.

In view of the inquiry made by the defendant through his agents and attorneys when the sale was made to Marshall, as to the indebtedness of the company then existing, and the requirement that it should be paid, it may be fairly presumed that this judgment was not rendered upon any indebtedness then existing. At least it is but a fair demand to make of the receiver that he should show when the debt was created for the judgment in the suit in which he was appointed, before he be allowed to recover from the defendant.

As to one of the demands now existing against the company, there is proof as to when it was created, and in whose favor, reference being made to the judgment existing against the company in

favor of Edward A. Price, William H. Palmer, and George E. Way, which was rendered on confesson on the 3d day of August, 1878, for the sum of $13,000. These persons are the individuals who advanced the moneys required by the defendant to pay off the mercantile indebtedness of $13,000, existing at the time he sold out his stock. It is quite certain that Way, who advanced $3,000 of this sum, and Palmer, the friend of Marshall, who advanced $5,000, were aware at the time the money was loaned by them, that the defendant had sold and transferred his stock to Marshall.

The papers upon their face indicate that the sale of the stock was completed on the twenty-fourth of July, and that the loan made by these gentlemen was not made until the next day, and that, as between these persons, it was understood to be a transaction, so far as the loan was concerned, subsequent to the sale of this stock. As between these judgment-creditors and the defendant the confession of judgment itself would seem to be conclusive evidence that the loan was made after the sale, for in the body of the confession it is stated as follows:

"Such judgment is confessed for money due to said plaintiffs by said defendants, and the facts out of which said debt arose are that heretofore and on or about the 25th day of July, 1878, at the city of New York, said plaintiffs loaned and advanced to said defendants, at its request, said sum of thirteen thousand dollais, and that no part of said sum has been repaid to said plaintiffs, but said defendants are justly indebted to said, plaintiffs in the said sum of thirteen thousand dollars."

This statement is verified by Marshall, the president of the company. In the affidavits he states "that the facts and statements in said confession are true." In the cash account kept by the company it also appears that the $13,000 was received on different days, and all after the twenty-fourth of July, and the checks which were given by Palmer and Way both passed into the hands of the defendant, and were held by him until he was satisfied that the avails would be applied in paying the then existing mercantile indebtedness. There is no room for contending that so far as this debt is concerned that it existed previous to the transfer. It also appears from the history of the transaction that the sale was made with the approval of the officers of the company.

Some of the persons who made sale of stock to Marshall at the same time the defendant sold out, were trustees of the company, and upon completing the sale they resigned and Way and others were elected to take their places on the twenty-fifth of July. The president of the company also resigned and Marshall, the defendant's transferee, was elected in his place on the twenty-fifth, and under his directions the books of the company were written up and the transaction between the defendant and Marshall entered upon the stock-book of the company. We are unable to detect from the proofs that any person who could claim to be a *bona fide* shareholder at the time of the transfer was not aware, and directly or indirectly assented to the sale made by the defendant, and desired and was willing that Marshall should become the owner.

From all the evidence these two propositions may be stated as true; that it does not appear that any of the existing creditors of the company held their demands prior to the sale, and that it does appear that the officers and managers of the company were fully cognizant of the transaction and approved of the same, and that the stockholders, so far as their names are disclosed by the proof, also concurred therein.

For these reasons, we concur in the conclusion of fact found by the learned referee, that the transaction was an honest one, made in good faith, and that an absolute title was vested in Marshall, the purchaser.

The circumstance that the defendant reserved the privilege, in his contract of sale, to receive and demand payment of the notes in paid-up stock of the corporation to double the amount of the notes, is not controlling that the transfer was not absolute and he ceased to have any control over the same, within the meaning of the rule which has been stated. As between himself and Marshall, there is no difficulty in holding that the transfer was absolute and that this provision of the contract is executory in its character, being an agreement on the part of Marshall to sell back the stock for the consideration which was named in the contract.

The option was not with Marshall, who purchased and gave his note for the consideration money; and, before there could be an exact compliance with this condition of the contract, Marshall was required to secure paid-up stock; the shares which were the subject

of the sale were not; and, so far as it appears from the evidence, there was not at that time any stock fully and actually paid up, unless it was the stock which had been previously transferred to Marshall for the rights and property which he transferred to the company. It cannot be said that Marshall held these shares as the trustee of the defendant, in view of the terms of the contract of sale, for, if the defendant should call for stock in payment of his notes, then Marshall would have to invest in cash $2,500 to secure an issue of the shares to be used in paying the notes.

In reaching this conclusion upon this particular proposition that the sale was in good faith, we do so in view of the particular circumstances connected with this case, and the nature and character of the contract between the defendant and Marshall, not intending to infringe upon the general legal proposition that it is essential for the seller of shares, to make the same available and to exempt himself from liability to pay future calls, that the sale should be absolute in terms, and, in fact, without any right in law or equity remaining in the transferer to demand a return of the shares from the transferee, and thus to share in the future prosperity of the corporation. The conclusion arrived at by the referee upon the real issue of fact, being concurred in, no cause of action is made out against the defendant. (*Mann* v. *Currie*, 2 Barb., 294; *Cowles* v. *Cromwell*, 25 id., 413; *Cole* v. *Ryan*, 52 id., 168; *Johnson* v. *Underhill*, 52 N. Y., 207; *Isham* v. *Buckingham*, 49 id., 216.)

The plaintiff also presents and seeks to maintain the proposition that defendant was at least liable to pay the unpaid balance upon the fifty shares of stock for which he subscribed, for the reason that in the contract of subscription there is a direct and affirmative promise that he will pay for the stock as called for by the company.

The contract of subscription is in the following words:

"We, the undersigned, hereby agree with the trustees of the Marshall Packing Company, and with each other, that we will take the number of shares of capital stock of said Marshall Packing Company, set opposite our respective names, and pay for the same at the par value of $100 per share, as follows, viz: Twenty per cent on or before the 10th day of August, 1877, and the balance as called for thereafter by said trustees."

The defendant after his subscription, and after the company was fully organized, recognized the existence of this contract by making payments upon the shares as called for by the company, and receiving a certificate for the number of shares mentioned in this contract. This created a legal liability on his part to pay the full amount of his subscription as called for by the company, and such liability continued up to the time of the commencement of this action, unless the company has released or surrendered up its right of action. (*The Phœnix Warehousing Co.* v. *Badger,* 67 N. Y., 294, affirming the judgment of this court, reported in 6 Hun, 293; *Dayton* v. *Borst,* 31 N. Y., 435.)

But we are of the opinion that the subsequent dealings between these parties, concerning this stock, has the legal effect to relieve the defendant from his original promise, and to put him on the same footing as the other stockholders who held unpaid stock, and who have entered into no special contract for the payment of the same.

All the provisions and conditions of the enabling act under which the company was organized, are to be read and considered as a part of the contract, the same as if they were inserted in the agreement. (*Small* v. *Herkimer Co. Mfg. Co.,* 2 Comst., 330 ; *Dayton* v. *Borst, supra,* 437.)

As we have already stated, it was the obvious purpose of the legislature to confer upon the corporators the right and privilege to make transfers of the stock, and when made, in good faith and upon compliance with the conditions of the enabling act, to shift the promise to pay the uncalled for balance upon the transferee who assumes that liability.

The right of the company to make a demand for the unpaid balances due upon the stock is limited to stockholders as such, and the current of authority is, that when stock certificates of the character of those issued to the defendant in this case have been delivered to the subscriber for the same, he becomes a member of the company, entitled to all the rights and privileges incident to that relation, and that the original promise is merged in the new obligation. Many and onerous obligations are, by the statute, imposed upon stockholders, which are not imposed upon mere subscribers for stock who have not received certificates therefor,

and this constitutes a good consideration for a release from his original undertaking.

The case of the *Phœnix Warehousing Company* v. *Badger* (*supra*), is not an authority in support of the plaintiff's position. In that case, the action was based upon the original promise of the subscriber for the stock, and no stock certificate had been issued to the defendant, who was an original subscriber.

The case of *Messersmith* v. *Sharon Savings Bank* (11 Reporter, 444), cited by the plaintiff's counsel, is not an authority which we should follow. It is a Pennsylvania case, and the provisions of the statute of that State authorizing the formation of corporations are not before us.

Under our statute the liability of the transferee to pay the uncalled for balance is made positive and certain. It is this provision of that statute that effects a release to the defendant from the obligation now sought to be continued, and places it upon his assignee.

Without this provision of the statute which has led us to the result stated, it would be difficult to understand upon what principle the defendant could avoid his obligation to the corporation, by transferring his property — interest in the corporation as represented by the stock — to another. But the liability on the part of the assignee of the stock to pay the unpaid balance, and the company's assent to the transfer by placing it upon its books, makes its clear to our minds that the company has released the defendant.

As further indicating the assent of the company to this arrangement the certificate issued by the company may be read, wherein it is stated that the stock "is transferable on the books of the company, when made in person, or by the attorney of the holder thereof."

The company could not, in the face of the facts in this case, sue the defendant on the promise contained in the original subscription paper. By its consent, the stock which made the consideration for the promise, was transferred to another who became directly liable to the corporation to pay future calls. No other intention can be inferred, than that the company intended to ratify the sale and release the defendant from his first undertaking and

from all obligations to pay any further calls on the shares transferred. (*Curbs* v. *Cumeul*, 25 Barb., 413.)

The judgment is affirmed, with costs.

BRADY, P. J., concurred.

DANIELS, J. (dissenting):

The action was prosecuted for the recovery of the sum of $2,500 unpaid upon 100 shares of the capital stock of the Marshall Packing Company of New York city, issued to the defendant. Fifty of these shares were so issued on the 10th day of November, 1877, and the remaining fifty were issued to him on the thirtieth day of the same month. These shares were all sold to William C. Marshall, by the defendant, on the 24th day of July, 1878. At that time there were no unpaid calls upon them, and as the referee found the sale to have been made in good faith, he directed judgment in favor of the defendant. And assuming his conclusion to have been warranted by the evidence, he was justified in giving such a direction as to the fifty shares last issued to the defendant, for they were purchased by him without in any form incurring further liability to the corporation than that which is ordinarily to be inferred from a purchase of corporate stock. And the rule has become reasonably well settled that a sale in good faith of such stock will discharge the vendor from further liability for the purchase-price to the company. (*Mann* v. *Currie*, 2 Barb., 294; *Cowles* v. *Cromwell*, 25 id., 431; *Cole* v. *Ryan*, 52 id., 168; *Isham* v. *Buckingham*, 49 N. Y., 216; *Seymour* v. *Sturgess*, 26 id., 134; *Veiller* v. *Brown*, 18 Hun, 571; *Johnson* v. *Underhill*, 52 N. Y., 203; *McCullough* v. *Moss*, 5 Denio, 567; *Penobscot, etc., R. R. Co.*, v. *Dummer*, 40 Me., 172.)

But as to the fifty shares first issued to the defendant, this case is distinguishable from those to which reference has been made. For it appeared that in the summer of 1877, the defendant entered into a formal agreement under which he subscribed for those fifty shares.

This agreement was in the following form:

We, the undersigned, hereby agree with the trustees of the Marshall Packing Company and with each other that we will take

the number of shares of capital stock of the said Marshall Packing Company set opposite our respective names, and pay for the same at the par value of $100 per share as follows, viz.: Twenty per centum on or before the 10th day of August, 1877, and the balance as called for thereafter by the said trustees. It is understood that the capital stock of the said company is $250,000, divided into 2,500 shares of $100 each.

It is also understood and agreed that the first installment of twenty per cent shall not be due and payable until 500 shares of the capital stock have been subscribed for.

It is also understood and agreed and these subscriptions are made on the condition that a committee, to be chosen by the subscribers to the capital stock from their own number, to which committee shall be added all individual subscribers who may desire to act upon it, shall, after thorough investigation, make a favorable report of the prospect of said company.

On the making of such favorable report by the said committee, these subscriptions and this agreement shall be binding and of legal force and effect, but otherwise shall be void.

And it was accepted by the corporation, and the fifty shares of stock subscribed for under it were, in accordance with its terms, awarded to the defendant. So far as the agreement was dependent upon the conditions or stipulations contained in it, they were shown to have been performed, and after the stock was issued to the defendant, he made payment upon its purchase-price. This certainly rendered the agreement a legally binding instrument upon him. (*Troy Turnpike, etc., Co* v. *McChesney*, 21 Wend., 296; *Sagory* v. *Dubois*, 3 Sandf. Ch., 509; *Lake Ontario, etc., R. R. Co.* v. *Mason*, 16 N. Y., 451; *Phœnix Warehousing Co., etc.*, v. *Badger*, 67 id., 294; *Buffalo and Jamestown R. R. Co.* v. *Clark*, 22 Hun, 359; affirmed, see 87 N. Y., 632.)

The liability of the defendant for the purchase-price of the fifty shares issued under this agreement is not, therefore, dependent upon the mere fact that he became the owner of these shares of the capital stock of the company, but it is to be derived from the terms and nature of this instrument, and for that purpose it is to be construed and enforced as other express contracts are which may be entered into by one party with another. (*Bucksport, etc., R. R.*

*Co.* v. *Buck,* 65 Me., 536; *Boston, etc., R. R. Co.* v. *Wellington,* 113 Mass., 79.)

And, as so construed, the agreement imposed an absolute and unqualified obligation upon the defendant to pay the par value of $100 for each of the fifty shares of stock issued to him upon his subscription. By the terms of the instrument, he unqualifiedly agreed to make such payment for these fifty shares, twenty per cent of the sum to be paid on or before the 10th day of August, 1877, and the balance as called for thereafter by the trustees. The instrument contained no stipulation whatever, either expressed or to be implied from anything contained in it, under which he could claim to be exonerated from this self-imposed liability upon the sale of the shares whose price he so obligated himself to pay. Its force and effect was in no respect less than that of a note or bond, delivered to the company upon an adequate consideration, for the payment of an equal amount of money. And, although such an instrument might be entered into to pay the purchase-price of corporate shares, the party executing it would be liable to make such payment according to the terms of his obligation, and no good reason can exist for distinguishing the obligation expressed in this instrument from one which might be made in that manner. It was founded upon a legal consideration, and in equally as positive terms bound the defendant to pay the sum of money mentioned in it.

The statute authorizing the transfer of the stock, contains no provisions relieving its owner, after it may have been transferred, from the force or effect of such an agreement. It merely regulates the manner in which the shares themselves may be transferred from one person to another (2 R. S. [6th ed.], 509, § 60), without containing any provision or declaration that the transfer shall produce any change whatever in the measure of liability created by such an instrument as was subscribed by the defendant. And no provisions appear to have been contained in the by-laws of the company which, by any possible rule of construction, can be attended with the consequence of relieving the defendant from the liability expressly incurred by him by the terms of this agreement. If the company had, in any form, entered into an agreement with the purchaser of the shares accepting his liability for their unpaid price in place of that of the defendant, the case would have

been different, but it did not. The sole agency it had in the transaction was to permit the shares issued to the defendant to be surrendered, and to issue others in lieu of them to the purchaser. It did no act, and entered into no arrangement contemplating the release or discharge of the defendant from the obligation he had entered into by the terms of this agreement. And the result must be under the rules of law applicable to contracts, and from which this cannot be made an exception, that the defendant continued liable under his agreement, notwithstanding the fact that he had sold the shares which he purchased under it, for it was not in his power to relieve himself from the payments he had expressly agreed to make by simply transferring the property, the price of which he had become liable to pay, to another person. And the transaction through which the sale itself was made, indicates that to have been the view entertained both by the seller and purchaser, for the defendant at that time was careful to take the covenant of Marshall, by which he undertook to indemnify and save him harmless " of and from all claims, demands and liabilities existing at the time of the delivery hereof against said corporation, and for which he may be responsible by reason of his having been a stockholder therein, and also of and from all calls and assessments on said one hundred shares."

That a transfer of the shares themselves would not relieve the defendant from this obligation, was very clearly intimated in *Schenectady, etc., Plankroad Company* v. *Thatcher* (1 Kernan, 102, 113). But as the shares which were there the subject of consideration were transferred after the calls upon them had been made, the determination of this point was not required for the decision of the case.

In *Messersmith* v. *Sharon Savings Bank* (11 Reporter, 444), this precise point seems to have been presented to the Supreme Court of Pennsylvania, and it was held that a transfer of the shares did not discharge the vendor from his legal obligation to pay for them created by such an agreement. A principle analogous to this has also been applied to the assignments of leases and the conveyance of real property encumbered by mortgage, where the circumstance of the assignee, or grantee, having assumed the liability has never been supposed in and of itself to relieve the party who has

expressly obligated himself for the payment of the same debt. (*Burr* v. *Beer's,* 24 N. Y., 178.)

This is no more than the general principle of law applicable to the liability of contracting parties, for they are not allowed to discharge themselves merely by subjecting another person to the obligation of performing their contracts. (1 Parsons on Con. [6th ed.], 217, 221, note *h.*)

No authority has been found warranting the conclusions that the defendant did not remain liable according to the terms of the contract which had been executed by him. But the result of the legal principles under which agreements are enforced is that he still remained liable to the company although he had parted with the property purchased by him. If this had been property of any other description and he had sold it, taking from the purchaser his agreement to pay the debt, it would not have been contended that the transaction would discharge him from liability to pay the price, as he had previously undertaken to do it. And the principle preventing that would appear to be equally as applicable to and controlling over the present action. To the extent of the unpaid purchase-price of this stock the defendant still continued to be liable, and the receiver of the company was entitled to enforce that liability in the present action.

When the stock was transferred the company was embarrassed, owing the sum of about $13,000 over and above its available assets, and that fact appears to have been known to the defendant who was, at the time, one of its officers. The person to whom the sale was made was not himself in solvent circumstances, unless the affairs of the company should afterwards prove to be prosperous, which they did not, for it soon failed, and the adjustment of its affairs became necessary through the intervention of a receiver. But, as the defendant himself testified that he was not aware of Marshall's precarious financial condition when the stock was sold to him, the referee concluded the defendant could not be held liable in the action, although he sold his stock for fifty per cent of its par value and reserved the right to take payment upon the notes delivered to him for the purchase-price in paid-up stock of the same company at this rate. It is not necessary to consider whether the referee properly concluded from this and the other circum-

stances in the case that this was a sale in good faith; for the reason that his conclusion as to the effect of the sale of the fifty shares obtained on the express agreement to pay for them by the defendant cannot be sustained. That, of itself, in view of the slender evidence from which the controlling inference of the referee was drawn, requires that there should be another trial of the controversy involved in this case. The judgment should, accordingly, be reversed, and a new trial ordered, with costs to abide the event.

Judgment affirmed, with costs.