## WINDSOR ELECTRIC LIGHT COMPANY

v.

## FRANK H. TANDY.

GENERAL TERM, 1893.

*Corporation. Subscription for shares. Liability without express promise.*

1. A subscriber to the capital stock of a corporation impliedly promises the corporation to pay it any legal assessment upon the shares subscribed for, and an action may be maintained without any express promise upon the part of the subscriber. The statutory remedy by forfeiture of the shares is cumulative.

2. Where persons associate themselves together as a corporation under R. L., ch. 153, and all the subsequent steps necessary to perfect the organization of the corporation are taken, the original subscribers become members of the corporation and liable to assessment upon their subscriptions.

General assumpsit for an assessment upon the shares of the defendant in the capital stock of the plaintiff. Plea, the general issue. Trial by jury at the May term, 1892, Windsor county, START, J., presiding. At the close of the testimony the court directed a verdict for the defendant upon the ground that no action could be sustained without an express promise, which the testimony did not tend to show. The plaintiff excepts.

*Gilbert A. Davis* and *Frank H. Clark* for the plaintiff.

The defendant, by subscribing for the shares, impliedly promised to pay for them. It was not necessary that the word "agree" or "promise" should be used. *Hartford and N. H. R. R. Co.* v. *Kennedy*, 12 Conn. 500; *Randall* v. *Lynch*, 12 East 179; *Bixby* v. *Moor*, 51 N. H. 402; *Chelcat* v. *Tromple*, 13 Barb. (N. Y.) 502; *R. and B. Railroad Co.* v. *Thrall*, 35 Vt. 553; *Lake Ont. etc. Railroad Co.* v. *Mason*, 16 N. Y. 451; *Small* v. *Herkimer Mfg. Co.*, 2 N. Y. 320.

The remedy by forfeiture of the shares is only cumulative. *Thorndike Co.* v. *Horton*, 9 Johns 217; *Herkimer Mfg. Co.* v. *Small*, 21 Wend. 275 and cases cited; *Troy, etc., Railroad Co.* v. *McChesney*, 21 Wend. 296; *Gill* v. *K. and C. G. and S. Mining Co.*, 7 Bush 635; *Instone* v. *Bridge Co.*, 2 Bibb. 577; *Gratz* v. *Read*, 14 Mon. 108; *Tar. Riv. Nav. Co.* v. *Neal*, 3 Hawks 520; *Hartford Railroad Co.* v. *Small*, 12 Conn. 469; *Merrimac Mfg. Co.* v. *Levy*, 54 Penn. 227.

*J. C. Enright* and *J. J. Wilson* for the defendant.

The defendant cannot be made liable without an express promise. *Conn. and Pass. Rd. Co.* v. *Bailey*, 24 Vt. 485; *Rutland and Burlington Railroad Co.* v. *Thrall*, 35 Vt. 536; *Central Railroad Co.* v. *Johnson*, 30 N. H. 390;

*Kennebec and Portland Railroad Co.* v. *Kendall*, 31 Me.
470; *Belfast and Moosehead Railroad Co.* v. *Moore*, 60
Me. 561; *Katama Land Co.* v. *Jernegan*, 136 Mass. 155;
*Boston, etc., Railroad Co.* v. *Wellington*, 113 Mass. 79;
*City Hotel* v. *Bickenson*, 6 Gray 586; *New Bedford, etc.,
Turnp. Corp.* v. *Adams*, 8 Mass. 138; *Piscataqua Ferry
Co.* v. *Jones*, 30 N. H. 491; *White Mts. Railroad Co.* v.
*Eastman*, 34 N. H. 124; *Kennebec, etc., Railroad Co.* v.
*Jarvis*, 34 Me. 36.

TYLER, J. This is an action of general assumpsit
brought by the plaintiff company to recover of the defend-
ant an assessment upon his subscription for shares of the
plaintiff's capital stock. After the defendant had rested the
court directed a verdict upon the ground that the action
could not be maintained in the absence of an express prom-
ise.

It appeared in evidence that the defendant and eight other
persons, on Feb. 21, 1890, associated themselves together
as a corporation, under ch. 153, R. L., as follows :

"We, the subscribers, hereby associate ourselves together
as a corporation under the laws of the state of Vermont, to
be known by the name of the Windsor Electric Light Co.,
for the purpose of furnishing electric light, electric heat and
electric power at Windsor, in the county of Windsor, in the
state of Vermont, with a capital stock of five thousand dol-
lars, divided into two hundred shares of twenty-five dollars
each. Dated at said Windsor, this 21st day of February,
A. D. 1890."

The articles of association were duly recorded July 3,
1890, in the office of the secretary of state, whereupon
the corporation was organized, by-laws were adopted and
officers were elected as provided by the statute. At a meet-
ing held Nov. 29, 1890, it was voted to assess the stock one
hundred cents on each dollar subscribed, and the assess-
ment was made payable Dec. 15, 1890.

The defendant's subscription was as follows :

"*Frank H. Tandy*,  -     -     -     -     -     80 shares," following which were the names and subscriptions of the other eight subscribers.

Section 3260, R. L., ch. 152, provides that when a proprietor in any corporation does not pay a tax or assessment laid or assessed by such corporation, agreeably to the by-laws thereof, the treasurer may sell, by public auction, the shares of the delinquent under such regulations as the corporation, by its by-laws, directs.   There was no provision in the by-laws that the plaintiff might sell delinquent stock, as is permitted by this section of the statute.

The plaintiff claims that the defendant's subscription to the capital stock raised an implied promise by him to pay all assessments lawfully laid upon his stock, and that the statutory remedy was merely cumulative.  The defendant contends that, as there is no provision for the enforcement of payment of assessments either in chapter 153, in the by-laws, or in the articles of association, the plaintiff's only remedy is by a forfeiture and sale, as provided in section 3260.

When the defendant and others, by articles, had associated themselves together pursuant to the provisions of the statute, and the articles had been recorded and certified by the secretary of state, and the corporation had been organized, and all the conditions precedent required by the statute had been complied with, those persons became a body politic and corporate under the laws of the state.   The plaintiff's corporate existence was then and thereby established, and the defendant became, by the act of subscription, a stockholder.   His subscription is presumed to have been accepted by the plaintiff, and it was binding upon it and upon the defendant, the prospective rights of membership being a sufficient consideration to support the contract. Beach on Pri. Cor., ss. 63 and 513; *Hartford & New Haven R. Co.* v. *Kennedy*, 12 Conn. 499.

Whether the defendant, by becoming a stockholder, incurred a personal liability to pay his proportion of such assessments as should be laid upon the stock, can best be determined by inquiring what the relation was which he assumed towards the corporation by the act of subscription. By agreement the entire capital was to be five thousand dollars, divided into two hundred shares of twenty-five dollars each. The defendant subscribed for and agreed to take eighty shares, and the corporation, by accepting his subscription, became obligated to assign that number of shares to him. It seems clear, then, that the defendant impliedly promised to contribute towards the entire capital as much money as his number of shares represented, and in such instalments and at such times as the corporation should require.

In *Lake Ontario, etc., R. Co.* v. *Mason*, 16 N. Y. 451, it was held that the defendant's subscription to the articles was, in effect, a contract to pay for the shares for which he subscribed. *Dayton* v. *Boist*, 31 N. Y. 435; *Phœnix Warehouse Co.* v. *Badger*, 67 N. Y. 294; *Merrimac Mining Co.* v. *Levy*, 54 Penn. St. 227.

Morawetz on Pri. Cor., s. 56, says that such a subscription does not constitute a mere executory contract of sale, but that the liability to pay the amount of the shares is an incident of the contract of membership; that the moment the subscriber assumes the status of a shareholder he becomes entitled to the rights and privileges incident to membership, and is liable to all the obligations of a stockholder, and must contribute the amount of capital subscribed by him. In section 128 the same writer says that the liability is not merely to pay for the shares for which he has subscribed, but to contribute to the capital of the company in proportion to the number of shares he has taken. See notes to same section. In Massachusetts, Maine and New Hampshire a different rule has obtained. In those states it has

been held that, unless there is an express promise to pay for the shares, the subscriber incurs no personal liability.

In *Essex Bridge Co.* v. *Tuttle*, 2 Vt. 393, the plaintiff's stock had been divided into 200 shares of $20 each, and Tuttle subscribed for ten shares. Hutchinson, J., said that having acquired title to that number of shares the defendant might well be considered as accepting the proposion to take the shares at that price; that the consideration might be considered as executed; that the defendant ought to make payment according to the mutual understanding between himself and the company; that the legal effect of his subscribing was to render himself liable. When that case was decided there was no remedy by statute against delinquent stockholders. The court refers to this fact, and the defendant relies upon it in the present case. He also relies upon *Conn. & Pass. R. Co.* v. *Bailey*, 24 Vt. 465. There the main question was whether the defendant, by the terms of his subscription, expressly promised to pay the plaintiff for the stock. The court in deciding that question said that unless there was an express promise for such payment the plaintiff must proceed by a forfeiture of the stock and the payments made thereon, as that was the only remedy prescribed by the charter, and referred to the earlier Massachusetts cases which are here relied upon It was held, however, that there was an express promise, so that the question whether the defendant would have been liable, by virtue of his subscription, to contribute according to the number o1 shares he had subscribed for, was not before the court, and what was said in respect to the remedy in case no express promise was found must be regarded as *obiter*.

In *R. & B. R. Co.* v. *Thrall*, 35 Vt. 536, the action was assumpsit for assessments. The defendant, in his subscription for stock, expressly promised to pay assessments as they should be laid by the plaintiff's directors, upon their compliance with certain conditions. The charter provided

that, upon non-payment, the directors might declare a for-feiture of all previous payments.   In that case the clause in the charter in respect to forfeiture seems to have been re-garded as sufficient to warrant a forfeiture and sale of the stock of shareholders who were delinquent in the payment of assessments as well as a forfeiture of previous payments, if any had been made.   (pp. 541, 51).   The defendant offered in evidence resolutions that were passed by the direc-tors relative to a forfeiture and sale of all stock upon which assessments remained unpaid, which offer was excluded; but it does not appear from the manner in which the case is reported that the defendant relied upon the provision in the charter relative to a forfeiture as a defence to the action. Judge Aldis said in the opinion:

"At an early day in railway enterprises it was claimed, that where provisions for forfeiture were embodied in the charter, the corporation could not sue for subscriptions, but must and could enforce the payment of them only by pro-ceedings in forfeiture.   But it has long been held that the right to sue and to declare stock forfeited co-exist, and that the latter proceeding is merely cumulative.   Such it was intended to be in this charter."   *   *   *

While the case cannot be regarded as authority upon the point here in controversy, we think that the rule stated in the extract quoted from the opinion is the more just, and ought to be adopted rather than the one that pre-vails in some of the other states.

It was not necessary that the defendant should *expressly* promise to pay for his shares, or to contribute his propor-tionate amount of the $5,000 capital.   The promise is clear-ly *implied*, and the action can be maintained upon it.   The remedy by forfeiture is only cumulative.

*Judgment reversed and cause remanded.*